MAINE SUPREME JUDICIAL COURT                     Reporter of Decisions
Decision:     2019 ME 58
Docket:       Oxf-18-294
Argued:       March 5, 2019
Decided:      April 16, 2019
Revised:      July 11, 2019


Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.*


STATE OF MAINE

v.

MATTHEW C. REED-HANSEN


SAUFLEY, C.J.

[¶1]  In this unusual appeal, the State challenges an order of the court (Oxford County, *L. Walker, J.*) imposing a significant discovery sanction following the State's failure to provide to the defendant a dash-cam video of the defendant ostensibly committing the crime for which he was charged.  The State challenges both the finding of a discovery violation and the judge's choice of sanction.  We discern no error or abuse of discretion, and we affirm the court's order.

---

  * Justice Humphrey sat at oral argument but did not participate in the development of the opinion.

## I. BACKGROUND

[¶2]   Matthew C. Reed-Hansen was stopped by a Maine State Police trooper for having an expired inspection sticker.  As a result of the stop, he was charged with and indicted for operating after revocation (Class C), 29-A M.R.S. § 2557-A(2)(B) (2018), and he made his initial appearance on December 6, 2017.  The ensuing indictment, dated December 14, 2017, alleged that on December 5, 2017, Reed-Hansen was operating a motor vehicle on a public way after his license had been revoked.  Shortly after he was indicted, Reed-Hansen sent the State a "standard discovery request letter request[ing] any and all video or audio that would have been created as part of this stop," *see* M.R.U. Crim. P. 16(c).  The State did not provide Reed-Hansen with any video or audio in response to that request, and, as was later shown, the prosecutor did not make an effort to determine if any such recording existed.

[¶3]   Reed-Hansen was arraigned on the indictment on February 21, 2018, at which time the court held a dispositional conference, and the matter was not resolved.  The following day, pursuant to M.R.U. Crim. P. 12(b)(3)(A), Reed-Hansen filed a motion to suppress the evidence from the stop.  *See* M.R.U. Crim. P. 41A.  A hearing on the motion to suppress was held on May 11, 2018.

[¶4]  The only witness for the State at the hearing was the trooper, who testified that he saw the expired sticker as Reed-Hansen passed him, coming from the opposite direction.  He estimated that both he and Reed-Hansen were traveling at approximately fifty miles per hour.  In response to a question from Reed-Hansen at the hearing, the trooper confirmed that he was running a dash-cam at the time Reed-Hansen drove by him.  The court stopped the hearing in order to allow the parties to address the discovery failure.

[¶5]  The trooper was quickly able to obtain a copy of the video for both parties to review.  The court heard a consistent description of the brief video from the parties, and the State conceded that, although the video had been requested by Reed-Hansen pursuant to Rule 16(c), the trooper had not been asked for the video and it had not been turned over to the defendant.  Reed-Hansen requested that the court grant his motion to suppress as a sanction for the State's discovery violation.  S*ee* M.R.U. Crim. P. 16(c), (e).

[¶6]  Rather than suggesting a continuance or other remedy, the State repeatedly insisted that there was no harm to Reed-Hansen arising from its failure to turn the video over because the video had no "evidentiary value" and the State did not "hear[] . . . any claim of any prejudice against the Defendant as a result of this."

4

[¶7]   The court's patience was obviously tried by the State's continued insistence that the video *showing the alleged crime being committed* had no "evidentiary value."   The State's response was puzzling: "It does show the vehicle approaching.  It shows the police officer turning around and pursuing him.  I don't think there's anything of evidentiary value . . . ."  Given the State's unfounded insistence that there was no harm from the discovery violation, and the State's failure to suggest any reasonable alternative to Reed-Hansen's motion, the court granted Reed-Hansen's request, ordering that "all evidence obtained as a result of the stop is ORDERED suppressed from use at trial . . . [a]s a sanction for the State's discovery violation for failing to produce [the] video."

[¶8]   Responding to the State's motion for findings, the court issued an order making additional findings of facts and stating its conclusions of law.  In its order, the court rebuked the State for its approach to its discovery obligations and affirmed its earlier order granting Reed-Hansen's motion to suppress.  *See* M.R.U. Crim. P. 41A(d).  With the written approval of Attorney General, the State timely appealed.  15 M.R.S. § 2115-A(1), (4), (5) (2018); M.R. App. P. 2B(b)(1), 21(b), (e).

## II.  DISCUSSION

[¶9]  Troublingly, notwithstanding the State's admission at the hearing, and confirmation during oral argument, that the State failed to comply with Rule 16(c), the State's brief includes this argument: "The State firmly believes . . . that the court erred in both fact and law in finding a discovery violation."  In addition, the State argues that the court should have reviewed the video itself, despite the parties' agreement as to the contents of the brief video and their description of its contents to the court.  Finally, the State argues that the court abused its discretion in selecting a sanction that effectively ended the prosecution.

A.      Discovery Violation

[¶10]  We begin by acknowledging the significant burdens placed on the prosecution to gather and provide discovery, burdens that have increased in this complex digital age.  There is little question that obtaining and delivering the broad range of digital and paper records related to the events, circumstances, and persons involved in a criminal case can create substantial work for prosecutors' offices.  The demands on prosecutors to comply with the

6

requirements of *Brady*,[1] *Giglio*,[2] and the rules of criminal procedure are extensive. Mistakes, although one hopes they are rare, are inevitable, and sanctions for such mistakes should be tailored to the individual circumstances of each case, with a focus on fairness and justice. *See State v. Poulin*, 2016 ME 110, ¶¶ 26-34, 144 A.3d 574; *State v. Reeves*, 499 A.2d 130, 133 (Me. 1985).

[¶11] Given the substantial responsibility placed on the prosecutors to provide timely discovery, however, it is all the more important that the obligation be treated seriously. The court here expressed its frustration with the State's cavalier attitude toward discovery in several ways. First, it noted that the State's response to its own failure to provide discovery was to urge the defendant's attorney to work harder:

> [The State] suggests that [defense counsel] could have simply, during the hearing, taken a look at the video and fashioned a cross-examination of the [t]rooper on the fly. No harm, no foul, as it were. Defendants' constitutional protections need not depend on such a slipshod practice, which is sure to invite abuse.

---

[1] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that the prosecution cannot suppress "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment").

[2] *Giglio v. United States*, 405 U.S. 150, 154 (1972) (holding that, "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within [the *Brady*] rule" (quotation marks omitted)).

The court further noted the State's persistent and inexplicable failure to recognize the relevance of the video:

> The point, which remarkably still evades the State, is that the failure to produce the video that, by agreement of the parties, showed precisely the moment that allegedly formed the [t]rooper's basis for his suspicion, is so significantly and presumptively prejudicial, given the timing of its disclosure, to deserve an equally significant sanction.

[¶12] We are equally baffled by the State's arguments.[3]  The State insists that "[i]n this case, the absolutely best evidence[—]the video recording itself [—]shows that it contains nothing discoverable under either Rule 16 or *Brady*."  The State apparently believes that it did not violate M.R.U. Crim. P. 16(c) because Reed-Hansen's inspection sticker could not be seen on the video given the speed with which the two vehicles passed each other.  According to the State, therefore, the video was not "exculpatory."

[¶13]  In arguing that the video was not "exculpatory," and therefore not discoverable, the State confuses its obligation pursuant to Rule 16(c) with its obligation pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  The due process concepts articulated in *Brady* require the State to disclose to the defendant evidence that is "favorable to the accused, either because it is exculpatory, or

---

[3] We review whether a discovery violation occurred de novo.  *State v. Hassan*, 2018 ME 22, ¶ 11, 179 A.3d 898.

8

because it is impeaching . . . ." *State v. Twardus*, 2013 ME 74, ¶ 32, 72 A.3d 523 (quoting *Strickler v. Greene*, 572 U.S. 263, 281-82 (1999)). Rule 16(c), in contrast, requires the disclosure of items, including video recordings, that are "material and relevant to the preparation of the defense." M.R.U. Crim. P. 16(c). The Committee Advisory note to Rule 16(c) lucidly distinguishes the State's Rule 16(c) obligation from its *Brady* obligation. *See* M.R.U. Crim. P. 16 committee advisory note, Dec. 2014.

[¶14] Argument as to both types of discovery violations were presented to the court here. With respect to Rule 16(c), the parties agreed that a request for the video had been made. *See* M.R.U. Crim. P. 16(c)(1), (2). The video, as described on the record by the parties, indisputably records[4] (1) Reed-Hansen's vehicle during some or all of the moments when the trooper determined that he had a reasonable articulable suspicion that Reed-Hansen had committed a traffic infraction and (2) Reed-Hansen's operation of the vehicle, an element of the very crime at issue. Despite the State's continued confusion, there can be no question that the video was "material and relevant to the preparation of the defense." M.R.U. Crim. P. 16(c)(1).

---

[4] The court refused to view the video and the video has never been made a part of the record in this matter. Because the parties agreed to the contents of the brief video and described its contents to the court, the State's argument that the court erred in failing to view the video is unpersuasive.

[¶15] Regarding the State's *Brady* obligations, Reed-Hansen argued that the video added strength to his argument that the officer could not possibly have seen the expired sticker as Reed-Hansen drove by the trooper.[5] Had the court needed to go further, it would likely have determined that withholding the video also constituted a *Brady* violation due to the video's exculpatory nature. *See Twardus*, 2013 ME 74, ¶ 32, 72 A.3d 523 (holding that the State commits a "*Brady* violation" when the State suppresses exculpatory evidence from the accused and there is a fair probability that absent its suppression, the outcome of the trial would have been different).

[¶16] The court did not err in concluding that the State violated its discovery obligations.[6]

---

[5] Indeed, the court appears to have accepted that argument as well as the obvious Rule 16(c) violation: "Naturally, Defendant's counsel questioned the [t]rooper as to how at a combined speed of 100 mph the [t]rooper could have noticed an expired inspection sticker. . . . The [c]ourt considered this a reasonable and persuasive line of questioning and the answers not commensurately reasonable or persuasive."

[6] To the extent that the State argues that it did not violate its obligation pursuant to Rule 16 because the failure to disclose was "inadvertent" and not in "bad faith," we have made it clear that whether the State's attorney acted "in bad faith . . . is of no relevance to the determination of whether Rule 16 was violated." *State v. Poulin*, 2016 ME 110, ¶ 26, 144 A.3d 574. In comparison, however, we have held that "the good faith of the State *is* relevant in determining an appropriate sanction for the discovery noncompliance." *State v. Corson*, 572 A.2d 483, 486 (Me. 1990).

10

### B.      Imposing the Sanction of Dismissal

[¶17]  We "review for an abuse of discretion a trial court's sanction for a discovery violation."  *State v. Hassan*, 2018 ME 22, ¶ 11, 179 A.3d 898 (quotation marks omitted).  Although the exclusion of evidence is an authorized remedy available to the court when the State commits a discovery violation, *see* M.R.U. Crim. P. 16(e), we agree with the State that the suppression of a necessary witness's testimony is an extreme sanction, and we agree that the inadvertence of the violation may be relevant to the sanction.

[¶18]  What the State seems to miss in the matter before us, however, is that there is a fine line between inadvertence and practices that the court described here as "slipshod."  Carelessness in this critical area of constitutional rights is not acceptable and is not an excuse.  Moreover, the State's continued insistence that the defendant "suffered no harm" as a result of the State's failure to turn over the video of the crime makes it painfully evident that the State still does not understand the nature of its obligations.

[¶19]  The court carefully noted that a motion to suppress is not ordinarily granted "in the context of a sanction for a discovery violation . . . ."  It determined, however, that the order should be issued for its "instructional value."  The court considered the State's many, unrelated justifications for why

the court should not sanction the State for its failure to produce the video. Only after hearing arguments that it found "unhelpful, illogical, and not required by any precedent," including the State's apparent misunderstanding of the discovery rules, did the court determine that suppressing the evidence from the stop was the appropriate sanction.[7] The court plainly used the sanction to educate the State that its casual approach to fulfilling its discovery obligation was unacceptable.[8]

## III. CONCLUSION

[¶20] The dash-cam video was evidence that, by both parties' accounts, showed Reed-Hansen at the time of the charged crime. Despite the clearly presented discovery request, the State failed to turn over the video to Reed-Hansen. The video was not delivered in time for the dispositional

---

[7] The State also argues that the court erred by failing to issue findings of fact and conclusions of law on the Fourth Amendment issues relating to the traffic stop. This contention is misguided. The exclusion of the evidence challenged in Reed-Hansen's suppression motion constituted a *sanction* that resulted from the State's discovery violation and did not result from adjudication of the merits of Reed-Hansen's claim that the traffic stop was unconstitutional. Once the court sanctioned the State by precluding the use of the trooper's testimony at trial, it was unnecessary for the court to engage in a Fourth Amendment analysis.

[8] The court included this recommendation to the State:

> Rather than trying to salvage a prosecution that has been tainted by such a ham handed discovery violation, the State should be reviewing pending motions to suppress . . . to ensure that it has fastidiously complied with its discovery obligations before the cross-examination of its law enforcement witnesses during future suppression hearings.

conference, and had not been disclosed or delivered by the time the court held the hearing on a motion to suppress evidence of the stop. The State's continued insistence that the video of the defendant driving by the trooper was not material or relevant defies common sense and provides full support for the court's determination that a serious sanction was warranted. The suppression of the evidence, while almost certainly fatal to the State's prosecution, fell well within the discretion of the court.

The entry is:

Order affirmed.

---

Andrew S. Robinson, District Attorney, and Joseph M. O'Connor, Asst. Dist. Atty. (orally), Office of the District Attorney, South Paris, for appellant State of Maine

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellee Matthew C. Reed-Hansen

Oxford County Unified Criminal Docket docket number CR-2017-631
FOR CLERK REFERENCE ONLY