STATE OF MAINE
CUMBERLAND, ss.

UNIFIED CRIMINAL DOCKET
DOCKET NO. CUMCD-CR-2022-02188

STATE OF MAINE )
)
)
v. )
)
)
DAMION BUTTERFIELD, )
)
Defendant. )

**ORDER ON MOTION TO DISMISS FOR
FAILURE TO DISCLOSE
EXCULPATORY EVIDENCE**

Before the Court is Defendant Damion Butterfield's Motion to Dismiss for Failure to Disclose Exculpatory Evidence. Mr. Butterfield moves for sanctions against the State pursuant to Rule 16(e) of the Maine Rules of Unified Criminal Procedure for the State's failure to disclose text messages containing exculpatory evidence sent by Mr. Butterfield using a tablet device issued and monitored by the Maine State Prison. For the following reasons, the Court finds that the State has violated its discovery obligations and imposes a sanction as discussed below.

## I. Background

Trial began in this matter on December 6, 2023. On December 12, 2023, defense counsel brought to the Court's attention that, although they had timely received from the State certain text messages sent by Mr. Butterfield on his tablet to his girlfriend, Caitlin Smith-Audet, they had suspected and indeed recently discovered that prior text messages containing substantial exculpatory evidence existed and had not been disclosed. Defense counsel discovered the earlier text messages when they met with Ms. Smith-Audet and reviewed the text messages as they appeared on her cellphone.

Hearing was held on the pending motion on December 13, 2023. Defense counsel called Corporal Lori Davies from the Maine State Prison and Detective Andrew Hagerty

from the Portland Police Department. Detective Hagerty was sequestered while Corporal Davies testified.

Corporal Davies testified that the Maine State Prison records all phone calls made by residents and retains all text messages sent by residents. She explained that because the Maine State Prison houses about eight hundred residents and only four corporals are available to review phone calls and text messages, not all phone call recordings and text messages are reviewed. She estimated, however, that she has reviewed approximately ninety percent of Mr. Butterfield's phone calls and text messages. She began monitoring Mr. Butterfield shortly after he arrived at the Maine State Prison in August 2022 because of a report that he was using in-person visits to attempt to receive contraband.

Corporal Davies testified that she was first contacted by Detective Hagerty regarding this case in or around December 2022. Detective Hagerty testified that he did not ask Corporal Davies or her superiors to investigate Mr. Butterfield, but that he told them that he wanted to be kept abreast of "anything" that was "going on" with Mr. Butterfield.

Corporal Davies testified that she was trained at the Maine Criminal Justice Academy and through on-the-job training to identify inculpatory and exculpatory statements, in addition to security-related purposes for monitoring residents' communications. While reviewing Mr. Butterfield's text messages from February 5, 2023, she noticed a text message that seemed to contain a confession. She explained that she decided to take a screenshot of the relevant text messages as well as the text messages immediately preceding and following that appeared to be part of the same "conversation." She sent the screenshots of those messages to Detective Hagerty the following day.

Corporal Davies testified that she did not review the text messages that defense

counsel identified as potentially exculpatory because the conversation she was reviewing began, in her opinion, after the exculpatory statements. She also explained that, on the program she uses to review text messages, she would have had to scroll back multiple "pages" to view the earlier messages. Corporal Davies testified, however, that the text messages were easily retrievable and easily shared.

The text messages that the State sought to introduce, in which Mr. Butterfield stated that he was going to call Detective Hagerty to confess, were sent on February 5, 2023, beginning at 11:04 p.m. The text messages that defense counsel discovered were from as recently as 10:59 p.m. on February 5, 2023, and suggested that Mr. Butterfield was considering "falsely convict[ing]" himself and pleading guilty despite being innocent.

When Corporal Davies sent Detective Hagerty the selected text messages from February 5, 2023, Detective Hagerty did not inquire whether there were more messages that preceded those that she sent. Detective Hagerty explained that he did not "put much stock in" Mr. Butterfield's statements because Mr. Butterfield did not call Detective Hagerty to confess, as Mr. Butterfield had suggested he would in the text messages that Corporal Davies provided to Detective Hagerty. He testified that he trusted the corporals at the Maine State Prison to identify and provide him with anything of importance to the investigation.

The Assistant Attorney Generals did not inquire about additional text messages when they received the messages from Detective Hagerty. The State conceded at hearing that, in hindsight, they should have asked more questions about the text messages they received.

## II.    Discussion

Pursuant to Rule 16(a)(2)(C), the State is obligated to provide to a criminal defendant "[a]ny written or recorded statements and the substance of any oral statements

made by the defendant." This obligation "extends to matters within the possession or control of any member of the attorney for the State's staff and of any official or employee of this State or any political subdivision thereof who regularly reports or who, with reference to a particular case, has reported to the office of the attorney for the State." M.R.U. Crim. P. 16(a)(1). The State is subject to a continuing duty to disclose any such statements that come within its possession or control. M.R.U. Crim. P. 16(b)(5). And, of course, the State's discovery obligations extend to a defendant's exculpatory statements as well as inculpatory statements. *See State v. Reed-Hansen*, 2019 ME 58, ¶ 13, 207 A.3d 191; *see generally Brady v. Maryland*, 373 U.S. 83 (1963).

Mr. Butterfield's text messages were within the possession of Corporal Davies, who had reported to and had been asked to report to Detective Hagerty with any material evidence relevant to Mr. Butterfield's case. Detective Hagerty in turn reported to the Assistant Attorney Generals regarding this case. The Assistant Attorney Generals clearly had a duty to inquire about the existence of additional text messages when they received the selected text messages from Detective Hagerty. *See State v. Foy*, 662 A.2d 238 (Me. 1995) ("[Rule 16] . . . includes a duty 'of reasonable diligence, of making reasonable inquiry to uncover material relevant to the case against the defendant.'" (quoting *State v. Jalbert*, 537 A.2d 593, 595 (Me. 1988))). The Court concludes that the State violated its discovery obligations by failing to inquire about the existence of additional text messages, including the exculpatory messages identified by defense counsel that arguably provide context to the inculpatory text messages they were provided.

After finding a discovery violation, the Court must determine an appropriate sanction. Rule 16(e) broadly authorizes the Court to impose the following sanctions: "[R]equiring the attorney for the State to comply; granting the defendant additional time or a continuance; relieving the defendant from making a disclosure required by Rule 16A;

prohibiting the attorney for the State from introducing specified evidence; and dismissing charges with or without prejudice." The Law Court has offered the following guidance on the imposition of sanctions:

> The demands on prosecutors to comply with the requirements of *Brady*, *Giglio*, and the rules of criminal procedure are extensive. Mistakes, although one hopes they are rare, are inevitable, and sanctions for such mistakes should be tailored to the individual circumstances of each case, with a focus on fairness and justice.

*Reed-Hansen*, 2019 ME 58, ¶ 10, 207 A.3d 191. Inadvertence on the State's part may be relevant to the choice of sanction, as may carelessness. *See id.* ¶ 18 ("[T]here is a fine line between inadvertence and practices that the court described here as 'slipshod.'"). Dismissal and suppression of key evidence are "extreme" sanctions, but either may be within the trial court's discretion for egregious or prejudicial violations. *See id.* ¶ 17; *State v. Sargent*, 656 A.2d 1196, 1199 (Me. 1995).

Mr. Butterfield's requested sanction of dismissal is extreme and disproportionate. A meaningful sanction is, however, warranted. The Court is not satisfied that suppression of the text messages from the State's case-in-chief would be a meaningful sanction because the State had already, prior to the filing of the pending motion, decided not to introduce the text messages. It was evident from testimony that persons who report to the Office of the Attorney General apparently misunderstand or do not adequately appreciate the seriousness of the State's discovery obligations.

Accordingly, the Court will suppress all the recordings of phone calls that Mr. Butterfield made while at the York County Jail and Maine State Prison, which were the subject of a prior unsuccessful motion to suppress ("the jail calls"). The Court chooses to suppress the jail calls to impress on the State the importance of conducting diligent inquiries into areas of automatic discovery and the apparent need for reevaluating its practices regarding its communications with investigating officers. *See Reed-Hansen*, 2019

ME 58, ¶ 10, 207 A.3d 191 (upholding trial court's ruling suppressing testimony of a key witness, a state trooper, as a sanction for the State's careless failure to disclose a dash-cam video).

The Court has previously in this case fashioned a discovery sanction modeled after the sanction upheld in *State v. Page*, 2023 ME 73, ___ A.3d ___. The Court will similarly suppress the jail calls from the State's case-in-chief but permit the State to use evidence from the jail calls for rebuttal or impeachment if Mr. Butterfield chooses to introduce any portion of the jail calls. This form of sanction is intended to prevent Mr. Butterfield from being able to use the jail calls in a "completely sanitized" manner, *Page*, 2023 ME 73, ¶ 17, ___ A.3d ___, while leaving the decision regarding whether to introduce the jail calls to Mr. Butterfield and his counsel.

## III. Conclusion

In conclusion, the Court finds that the State violated its discovery obligations by failing to make a diligent inquiry regarding Mr. Butterfield's text messages. As a sanction, the State will be prohibited from using the jails calls in its case-in-chief.

The Court orders as follows:

> Defendant Damion Butterfield's Motion to Dismiss for Failure to Disclose Exculpatory Evidence is GRANTED as follows: The State is prohibited from using in its case-in-chief any recordings of phone calls placed by Mr. Butterfield at the Maine State Prison or York County Jail ("the jail calls"). If Mr. Butterfield chooses to introduce the jail calls, the State is permitted to offer additional evidence from the jail calls to rebut, explain, or complete the evidence presented by Mr. Butterfield.

The clerk is instructed to incorporate this Order by reference on the docket pursuant to M.R.U. Crim. P. 53(a).

Dated: December 14, 2023

MaryGay Kennedy, Justice
Maine Superior Court