MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2023 ME 74
Docket:       Som-23-54
Argued:       October 3, 2023
Decided:      December 14, 2023
Revised:      January 18, 2024

Panel:        STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

## STATE OF MAINE

v.

## TAYLOR A. PELLETIER

JABAR, J.

[¶1]  Taylor A. Pelletier appeals from a judgment entered by the trial court (Somerset County, *Mullen, C.J.*) following a jury-waived trial convicting him of two counts of kidnapping with a dangerous weapon (Class A), two counts of aggravated assault (Class B), one count of domestic violence threatening with a dangerous weapon (Class C), and one count of domestic violence terrorizing with a dangerous weapon (Class C).  On appeal, Pelletier challenges the sufficiency of the evidence supporting his conviction, the court's denial of his motion to dismiss Count 1 of the indictment, and the court's denial of his motion to dismiss for discovery and *Brady* violations.  We affirm the judgment.

## I. BACKGROUND

### A. Facts

[¶2] The trial court found the following facts, which are supported by competent evidence in the record. *See State v. Wilson*, 2015 ME 148, ¶ 13, 127 A.3d 1234. In August 2021, Pelletier lived at a house in Fairfield with the victim and three children. Pelletier had recently installed a home security system, which consisted of several cameras and two digital video recorders (DVRs). The cameras recorded, without audio, the events that occurred at the house on the afternoon and early evening of August 15, 2021, and those recordings were stored on the DVRs and admitted in evidence at trial.

[¶3] At about 3:30 p.m. on August 15, the victim arrived at the house in her pickup truck. Pelletier came outside when she arrived. He was jealous and suspicious of the victim, who he believed had just returned from visiting a male friend. He told the victim to "get the fuck out of the truck now and get the fuck inside." The victim got out of the truck and went into the garage adjoining the house, with Pelletier trailing close behind.

[¶4] Once inside the garage, Pelletier began to handle the victim aggressively, and she fell onto the stairs leading from the garage into the house. As the victim lay on the stairway, Pelletier brandished a pistol that he had been

carrying in his waistband and brought his face close to hers. Pelletier then placed the gun back in his waistband, picked the victim up by her hair, and directed her inside the house.

[¶5] Once inside, Pelletier pushed the victim onto the kitchen floor. She remained there, behind a counter and out of view of the cameras, for about fifteen minutes while Pelletier appeared to kick her and point his gun at her. When the victim began to sit up so that her head appeared above the counter, Pelletier became agitated, leaned down to speak to her, and then struck her several times with the butt of his gun. She then tried to stand up but fell back down to the floor. Pelletier continued to assault her for about five more minutes.

[¶6] Pelletier then told the victim to get one of the children, who had been sleeping in the truck while this initial assault occurred. She did so, and when she came back into the kitchen, Pelletier lunged at her, grabbing the side of her face and her neck. He held her there for a few moments, bringing his face in so close to hers that they almost touched.

[¶7] Pelletier then let go of the victim. She walked backward out of the kitchen as Pelletier advanced toward her. The victim's left hand was extended

4

out toward Pelletier, and she held the side of her head with her right hand. Pelletier backed her into a doorway.

[¶8] He began berating her and then punched her in the side of the face. Pelletier punched the victim at least two more times while she tried to defend herself by raising her arms and one of her legs. She struggled to stand and briefly slumped against the door before successfully standing up. Pelletier continued to berate the victim and raised his gun toward her in a threatening manner while grabbing the side of her neck. The victim slumped against the door again, and Pelletier brought his face close to hers while holding his gun near her head. The victim eventually stood back up, but Pelletier grabbed her neck and head and forced her back to the ground.

[¶9] At about 4:30 p.m., an hour after he began his attacks, Pelletier went outside, leaving the victim sitting in the doorway. She remained there for about forty minutes, while Pelletier and the children came in and out of the house intermittently. At one point, Pelletier sat down across from the victim and spoke with her. Throughout this period, Pelletier's gun remained tucked in his waistband, visible to the victim.

[¶10] At 5:08 p.m., when Pelletier and the children were outside, the victim stood up and went to the bathroom. A few minutes later, Pelletier came

back inside, went into the bathroom, and began speaking with the victim. She testified that he became "triggered" during their conversation and assaulted her again, choking her until she "started seeing stars." This last assault, which was not captured on a camera, occurred sometime between 5:19 p.m. and 6:24 p.m.

[¶11] The victim then gathered the children and left the house around 6:40 p.m., about three hours after Pelletier had first attacked her in the garage. At first, the victim was unable to start the truck because Pelletier had disconnected the battery, but she quickly discovered the issue, reconnected the battery, and drove off. She went to her grandparents' house, where she eventually spoke to a police officer who observed that she was crying, scared, and had visible injuries.

[¶12] The victim testified that Pelletier told her repeatedly throughout the incident that he was going to kill her. She also testified that the blows he inflicted on her were painful and that she did not feel free to leave the house during or between the attacks. The trial court found the victim's testimony credible and compelling.

6

## B.    Procedural History

[¶13]  The State filed a criminal complaint against Pelletier on August 18, 2021, and on August 25, 2022, a grand jury indicted him on the following nine counts:

**Count 1:**  Kidnapping the victim and/or the three children with a dangerous weapon, with intent to cause bodily harm (Class A), 17-A M.R.S. § 301(1)(A)(3) (2021);[1]

**Count 2:**  Kidnapping the victim and/or the three children with a dangerous weapon, with intent to terrorize (Class A), *id.* § 301(1)(A)(4);

**Count 3:**  Domestic violence aggravated assault of the victim with a dangerous weapon (Class B), 17-A M.R.S. § 208-D(1)(C) (2021);[2]

**Count 4:**  Aggravated assault of the victim (Class B), 17-A M.R.S. § 208(1)(C) (2021);[3]

**Count 5:**  Aggravated assault of a child (Class B), *id.*;

**Count 6:**  Assault of a child less than six years old (Class C), 17-A M.R.S. § 207(1)(B) (2021);[4]

---

[1]  This version of the kidnapping statute was in effect until October 17, 2021, when it was superseded by P.L. 2021, ch. 299, § B-1 (codified at 17-A M.R.S. § 301(1)(A) (2021)).

[2]  This version of the statute defining the crime of domestic violence aggravated assault was in effect until December 31, 2022, when it was superseded by P.L. 2021, ch. 647 § B-19 (codified at 17-A M.R.S. § 208-D(1) (2023)).  The statute has since been amended, but not in a way that affects the present case.  P.L. 2023, ch. 465, § 4 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 208-D(1) (2023)).

[3]  The aggravated assault statute has remained the same since 2021.  *See* 17-A M.R.S. § 208 (2023).

[4]  The assault statute has remained the same since 2021.  *See* 17-A M.R.S. § 207 (2023).

**Count 7:** Domestic violence criminal threatening of the victim with a dangerous weapon (Class C), 17-A M.R.S. § 209-A(1)(A) (2021);[5]

**Count 8:** Domestic violence criminal threatening of a child with a dangerous weapon (Class C), *id.*; and

**Count 9:** Domestic violence terrorizing of the victim and/or the three children with a dangerous weapon (Class C), 17-A M.R.S. § 210-B(1)(A) (2021).[6]

Pelletier waived his right to a jury trial, and the court set a trial date for September 22, 2022.

[¶14] On July 20, 2022 (before the State obtained the indictment), Pelletier's attorney sent a discovery request to the State for, inter alia, copies of "any . . . recording (audio or visual) . . . which [is] material to the preparation of a defense . . . , including any and all video and audio recordings"; "[a]ll videotapes . . . relating in any way to the alleged offense"; and "[a]ny materials or information within the scope of *Brady v. Maryland*, 373 U.S. 83 (1963) . . . including . . . information that may detract from the credibility or probative value of evidence or testimony used by the government." On August 3, 2022,

---

[5] This version of the domestic violence criminal threatening statute was in effect until December 31, 2022, when it was superseded by P.L. 2021, ch. 647, § B-22 (codified at 17-A M.R.S. § 209-A(1)(A) (2023)). The statute has since been amended, but not in a way that affects the present case. P.L. 2023, ch. 465, §§ 7, 8 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 209-A(1)(A), (B) (2023)).

[6] This version of the domestic violence terrorizing statute was in effect until December 31, 2022, when it was superseded by P.L. 2021, ch. 647, § B-24 (codified at 17-A M.R.S. § 210-A(1)(C) (2023)).

8

Pelletier's attorney sent an email to the prosecutor requesting "an exact copy of what was seized from the house." He stated that he had received twenty-six videos that the State intended to use in its case-in-chief but had not received any other videos that were recovered from the DVRs seized from Pelletier's residence. Pelletier's attorney repeated his request on August 23, 2022.

[¶15] On September 19, 2022, three days before the scheduled trial date, Pelletier filed a motion for discovery sanctions, stating that he still had not received all the videos from the DVRs. He requested that either the indictment be dismissed or the State be precluded from playing at trial any videos recovered from the home. Following a hearing on September 22, 2022, which had been scheduled as the original trial date, the court found that the State had violated Rule 16 of the Maine Rules of Unified Criminal Procedure. However, it did not decide whether the State had violated its obligations under *Brady*, noting that it had not had a chance to view the videos and therefore could not determine whether they were exculpatory. The court declined to impose the sanctions Pelletier requested and instead continued the trial until October 11 to allow the State time to provide the videos to Pelletier and to allow Pelletier time to review the videos and prepare a defense. It invited Pelletier to renew his motion if he viewed the videos as "being relevant and certainly if

determined to be *exculpatory*." The court explained that if "the videos tend to be exculpatory on one or more of the charges or impeaching as to one or more witnesses, a more serious sanction may be in order."

[¶16] The court held a bench trial on October 11 and 12, 2022. Following the trial, Pelletier filed a motion to dismiss Count 1 of the indictment (the first kidnapping charge) and a second motion for sanctions or a finding that the State violated its obligations under *Brady*, or both. He argued that Count 1 should be dismissed because it failed to allege the elements of kidnapping. He further argued that the videos that had been disclosed because of the court's September 22, 2022, order were in fact exculpatory, and thus further sanctions were warranted.[7]

[¶17] On January 12, 2023, the trial court issued a decision and judgment. It made extensive factual findings based on the video evidence and the trial testimony and found Pelletier guilty on multiple counts:

---

[7] As a separate basis for finding a *Brady* violation, Pelletier also alleged that the State had failed to inform him that the child who testified had made inconsistent statements prior to the bench trial. However, the witness Pelletier had hoped would testify to this effect invoked his Fifth Amendment right against self-incrimination, and the trial court denied Pelletier's motion due to lack of evidence. Pelletier does not challenge this ruling on appeal.

**Count 1**:   Kidnapping the victim with a dangerous weapon with intent to cause bodily harm (Class A);

**Count 2**:   Kidnapping the victim with a dangerous weapon with intent to terrorize (Class A);

**Count 3**:   Domestic violence aggravated assault of the victim with a dangerous weapon (Class B);

**Count 4**:   Aggravated assault of the victim (Class B);

**Count 7**:   Domestic violence criminal threatening of the victim with a dangerous weapon (Class C); and

**Count 9**:   Domestic violence terrorizing of the victim with a dangerous weapon (Class C).

Counts 1 and 2 were merged, as were Counts 3 and 4. The trial court acquitted Pelletier of all charges naming the children as victims (Counts 5, 6, and 8).

[¶18]   The court also addressed Pelletier's pending motions. It first concluded that Count 1 of the indictment complied with Rule 7(c) of the Maine Rules of Unified Criminal Procedure and therefore denied Pelletier's motion to dismiss that count. It also declined to issue further discovery sanctions, noting that although some of the late-disclosed videos were exculpatory regarding the charges involving the children, Pelletier had already been acquitted of those charges and thus had not suffered any prejudice because of the State's failure

to produce the videos in a timely manner. The trial court entered a judgment of conviction, from which Pelletier timely appeals.[8]

## II. DISCUSSION

[¶19] On appeal, Pelletier challenges his kidnapping conviction, arguing that, to the extent that he restrained the victim, that restraint was incidental to the other crimes he committed and therefore legally insufficient to constitute kidnapping. He also argues that Count 1 of the indictment should have been dismissed because it fails to allege that he restrained one person with the intent to cause bodily harm to that same person, and thus does not allege the elements of kidnapping. Finally, he argues that the severity of the State's discovery and *Brady* violations warranted dismissal of the kidnapping charges.

## A. Sufficiency of the Evidence

[¶20] "To decide whether the record contains sufficient evidence to support a criminal defendant's conviction, we view the evidence in the light most favorable to the State to determine whether the fact-finder could rationally find each element of the offense proved beyond a reasonable doubt." *State v. Hall*, 2017 ME 210, ¶ 29, 172 A.3d 467. If a court finds specific facts in

---

[8] Pelletier also sought leave to appeal from his sentence, but the Sentence Review Panel denied his request. *See State v. Pelletier*, No. SRP-23-53 (Me. Sent. Rev. Panel Apr. 19, 2023).

12

reaching its verdict, "we review those findings for clear error and will uphold them if supported by competent evidence in the record." *Wilson*, 2015 ME 148, ¶ 13, 127 A.3d 1234. "We will not substitute our judgment for that of the fact-finder unless it is the product of bias, prejudice, [or] improper influence, or was reached under a mistake of law or in disregard of the facts." *Me. Farmers Exch. v. McGillicuddy*, 1997 ME 153, ¶ 12, 697 A.2d 1266.

[¶21] Under Maine law, a person is guilty of kidnapping if he "knowingly restrains another person" with the intent to inflict bodily injury on that person or terrorize that person or a third person. 17-A M.R.S. § 301(1)(A)(3)-(4). The kidnapping statute defines "restrain" to include "restrict[ing] substantially the movements of another person without the other person's lawful consent or other lawful authority by . . . [c]onfining the other person for a substantial period . . . ." 17-A M.R.S. § 301(2)(C).

[¶22] A "substantial period" is not a specifically defined amount of time.[9] *See id.* § 301. Instead, "the inclusion of the substantial period requirement in the statutory definition of 'restrain' was intended to avoid having kidnapping include conduct that was merely incidental to the commission of some other

---

[9] We have held that a confinement as brief as thirty minutes satisfies the "substantial period" requirement. *See State v. Hofland*, 2012 ME 129, ¶¶ 2-3, 22-24, 58 A.3d 1023.

crime against the victim." *State v. Estes*, 418 A.2d 1108, 1113 (Me. 1980); *see also State v. Long*, 577 A.2d 765, 766 (Me. 1990) (noting that the definition of "restrain" used in the kidnapping statute "precludes a separate conviction for kidnapping, a felony, based upon conduct that merely facilitates the commission of other crimes").

[¶23] Whether restraint is incidental to the commission of another crime or culpable in and of itself is a fact-intensive inquiry that depends on the totality of the circumstances. *See, e.g.*, *Estes*, 418 A.2d at 1110, 1112-13. In our role as an appellate court—confined to the factual record in front of us and without the benefit of live witness testimony—we are loath to disturb a fact finder's determination that a defendant confined a victim for a substantial period. *See State v. Hofland*, 2012 ME 129, ¶¶ 22-24, 58 A.3d 1023; *Estes*, 418 A.2d at 1112-13; *State v. Owens*, 638 A.2d 64, 64 (Me. 1994). But our deference is not unlimited and, consistent with the applicable standard of review, we will vacate a conviction if we cannot identify any competent evidence in the record that supports the fact finder's determination. *See State v. Taylor*, 661 A.2d 665, 666, 668 (Me. 1995) (vacating an attempted kidnapping conviction where restraint was for only a brief period and for the sole purpose of attempting to sexually assault the victim); *see also Long*, 577 A.2d at 766.

14

[¶24] Here, we see ample evidence in the record to support the trial court's specific finding that Pelletier restrained the victim for a substantial period because the restraint lasted, as the trial court put it, "longer than the time necessary to commit the assault against" her. While the restraint that Pelletier exerted during his repeated violent assaults of the victim would be insufficient on its own to support a kidnapping conviction, evidence in the record indicates that Pelletier restrained the victim between the assaults as well. Most significantly, after the defendant punched the victim repeatedly and pointed his gun at her in the doorway, she sat there for about an hour. During this time the defendant remained close by, with his gun prominently displayed in his waistband. And when the victim dared to defy him by getting up and going to the bathroom, he followed her and attacked her again. The trial court could, and did, rationally rely on this evidence to conclude that Pelletier restrained the victim for a substantial period.

[¶25] In addition, there were other brief moments between the assaults when Pelletier took discrete actions to control the victim's movement, such as when he told her to get out of the truck and go inside, when he dragged her by her hair into the house, when he told her to go back outside and get the child who had been sitting in the truck, and when he disconnected the truck battery

to prevent her from leaving. Taken together, these acts could also support a finding that Pelletier restrained the victim for periods beyond those involved in the actual attacks.

[¶26] Given this competent evidence in the record indicating that Pelletier confined the victim inside the house in a manner that was separate and distinct from his brutal assaults, the trial court rationally found that Pelletier "restrain[ed]" the victim as that term is defined in the kidnapping statute.

## B. Sufficiency of the Indictment

[¶27] Pelletier also challenges the court's denial of his motion to dismiss Count 1 of the indictment. That count cites 17-A M.R.S. § 301(1)(A)(3) and 17-A M.R.S § 1604(5)(A) (2021)[10] and reads:

> On or about August 15, 2021, in Fairfield, Somerset County, Maine, TAYLOR A. PELLETIER, with the use of a dangerous weapon, a firearm, did knowingly restrain another person or persons, [the victim and the three children], with the intent to inflict bodily injury upon one or more of them. This conduct was committed against a family or household member or members as defined by 19-A M.R.S. section 4002(4).

---

[10] Title 17-A M.R.S. § 1604 has since been amended, though the amendments are not relevant to the present case. *See, e.g.*, P.L. 2023, ch. 316, § 12 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 1604(5)(B) (2023)).

Pelletier argues that Count 1 is insufficient to charge kidnapping because the relevant statute, 17-A M.R.S. § 301(1)(A)(3), prohibits restraint of a person with the intent to cause bodily injury to that same person, and Count 1 lists four potential victims in the alternative to each other. According to Pelletier, this language implies that he could have been convicted if the trial court found that he restrained one of those people with the intent to harm another of them, which is contrary to the statute. The State contends that the indictment is "legally satisfactory" because it provided sufficient notice to Pelletier that he was being charged with kidnapping the victim, the children, or any combination of them.

[¶28] We review de novo a challenge to the legal sufficiency of an indictment. *See State v. Stevens*, 2007 ME 5, ¶¶ 2-5, 912 A.2d 1229; *State v. Strong*, 2013 ME 21, ¶¶ 12, 14-19, 60 A.3d 1286; *State v. Solomon*, 2015 ME 96, ¶ 9, 120 A.3d 661. Under Rule 7(c) of the Maine Rules of Unified Criminal Procedure, an indictment must be "a plain, concise, and definite written statement of the essential facts constituting the crime charged." When a defendant challenges the sufficiency of an indictment,

> [t]he test to be applied is whether a respondent of reasonable and
> normal intelligence, would, by the language of the indictment, be
> adequately informed of the crime charged and the nature thereof
> in order to be able to defend and, if convicted, make use of the

conviction as a basis of a plea of former jeopardy, should the occasion arise.

*State v. Charette*, 159 Me. 124, 127, 188 A.2d 898, 900 (1963).

[¶29]  In this case, a person of reasonable, normal intelligence would understand from reading Count 1 of the indictment that Pelletier had been charged with kidnapping one or more of the people listed.  The count directly cites the relevant statute, which provides that a person is guilty of kidnapping when he "knowingly restrains another person with the intent to . . . [i]nflict bodily injury upon the other person."  17-A M.R.S. § 301(1)(A)(3).  The count then recites those elements, charging that Pelletier "knowingly restrain[ed]" the victim and the three children "with the intent to inflict bodily injury upon one or more of them."  We concede that a person reading only the language in Count 1, without reading the statute that it cites, might believe that Pelletier could be convicted of kidnapping if the court found that he restrained one of the people listed with the intent to inflict injury on another of them.  But that would not be a reasonable way to read Count 1 because Count 1 cites the statute, which makes clear that the requisite restraint and intent must be directed at the same person. Although the indictment certainly could have been clearer, it did communicate "the essential facts constituting the crime charged," as it was required to.  M.R.U. Crim. P. 7(c); *cf. State v. Allison*, 427 A.2d 471, 474

18

(Me. 1981) ("Proper grammatical construction [in an indictment], while always preferable, is not always indispensable.").

[¶30] Furthermore, as the court noted, "[t]here was no Motion For Bill of Particulars filed by the three defense counsel that represented [Pelletier] at various points in time, nor did there seem at trial that any confusion existed concerning what [Pelletier] was charged with and who the alleged victims were."[11] The fact that Pelletier did not request that the State clarify the indictment before trial by requesting a bill of particulars further supports the court's determination that the indictment adequately stated the basis for the charges.

[¶31] We hold that Count 1 of the indictment was not so flawed as to deprive Pelletier of notice of the charge or an opportunity to defend himself or to put him at risk of double jeopardy, and was therefore legally sufficient to charge Pelletier with kidnapping.

---

[11] A defendant may file a bill of particulars prior to trial at the close of discovery if "such discovery is inadequate to establish a record upon which to plead double jeopardy, or to prepare an effective defense because further information is necessary respecting the charge stated in the charging instrument, or to avoid unfair prejudice." M.R.U. Crim. P. 16(d).

## C.    Discovery and *Brady* Sanctions

[¶32]   Finally, Pelletier argues that the court should have dismissed Counts 1 and 2 of the indictment because the State failed to timely provide all the videos that were recovered from the DVRs at Pelletier's residence and because those videos were exculpatory and therefore within the State's disclosure obligations under *Brady*.   To be clear, the State had provided all the videos that it intended to use in its case-in-chief and that showed the assaults and interactions between Pelletier and the victim on the afternoon of August 15, 2021.   The State did not provide other videos from the DVRs showing, for example, Pelletier outside with the children.   The State acknowledges that it violated the discovery rules but argues that the initial continuance was a sufficient sanction.

[¶33]   We review for an abuse of discretion the sanctions imposed by a trial court to remedy a discovery or *Brady* violation. *State v. Reed-Hansen*, 2019 ME 58, ¶ 17, 207 A.3d 191.   A court may impose any of the sanctions listed in Rule 16(e),[12] up to and including dismissal with prejudice, but the sanction

---

[12] Rule 16(e) provides:

> **Sanctions for Noncompliance.** If the attorney for the State fails to comply with this Rule, the court, on motion of the defendant or on its own motion, may take appropriate action, which may include, but is not limited to, one or more of the following: requiring the attorney for the State to comply; granting the defendant additional time or a continuance; relieving the defendant from making a disclosure

20

"should be tailored to the individual circumstances of each case, with a focus on fairness and justice." *Reed-Hansen*, 2019 ME 58, ¶ 10, 207 A.3d 191. We will vacate a trial court's choice of sanction only if it fails to remedy the violation to such an extent that the defendant is deprived of a fair trial. *State v. Poulin*, 2016 ME 110, ¶ 28, 144 A.3d 574; *State v. Matatall*, 2018 ME 155, ¶ 7, 196 A.3d 1293.

[¶34]  Here, although the State's failure to produce the requested videos until after the original trial date constituted a serious discovery violation, the court's choice of sanction sufficiently mitigated its prejudicial effect.  In its pretrial order of September 22, the court found that the State had violated the discovery rules by failing to disclose all the videos.  It imposed a continuance to allow Pelletier and his attorney time to review the videos and prepare his defense.  They availed themselves of that opportunity and presented some of those videos at trial.  Because of the court's sanction, the State's late disclosure of the videos did not prevent Pelletier from using them in his defense.

[¶35]  As for the alleged *Brady* violation, Pelletier points out that the court indicated that further sanctions might be appropriate if it found that the

---

required by Rule 16A; prohibiting the attorney for the State from introducing specified evidence; and dismissing charges with or without prejudice.

M.R.U. Crim. P. 16(e).

late disclosed videos were relevant and exculpatory, and then, after viewing those videos, did find "certain portions of the videos exculpatory regarding the criminal charges involving the children." But that finding did not necessitate further sanctions, as Pelletier insists. As the court noted, it did not convict Pelletier of any of the charges relating to the children. Pelletier therefore did not suffer any prejudice because of the late disclosure of the exculpatory videos, and further sanctions were not necessary to ensure a fair trial. *See Poulin*, 2016 ME 110, ¶¶ 28-34, 144 A.3d 574.

[¶36] Pelletier also argues that the State's "lateness, carelessness, and disregard" for its discovery obligations require the sanction of dismissal. However, the court expressly found that the State did not act in bad faith. Furthermore, Pelletier's reliance on our holding in *Reed-Hansen* to support this argument is misplaced. In that case, the court imposed the sanction of dismissal to remedy a discovery violation and we affirmed based in part on evidence of "slipshod" practices by the State. *Reed-Hansen*, 2019 ME 58, ¶¶ 17-19, 207 A.3d 191. But this case is procedurally different because the court here denied Pelletier's second motion for sanctions, while the court in *Reed-Hansen* granted the defendant's motion. *See id.* ¶¶ 7-8. Although evidence of the State's motives and carelessness might provide a basis for us to affirm dismissal under the

22

deferential abuse-of-discretion standard, we are not required to vacate when a court comes to the opposite conclusion under different circumstances.

[¶37]   We therefore conclude that the court here did not abuse its discretion when it denied Pelletier's second motion for sanctions for discovery or *Brady* violations.

The entry is:

Judgment affirmed.

Hunter J. Tzovarras, Esq. (orally), Bangor, for appellant Taylor A. Pelletier

Maeghan Maloney, District Attorney, and Shannon Flaherty, Asst. Dist. Atty. (orally), Prosecutorial District IV, Skowhegan, for appellee State of Maine

Somerset Unified Criminal Docket docket number CR-2021-816
For Clerk Reference Only