MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2024 ME 54
Docket:      Pen-23-196
Argued:      January 10, 2024
Decided:     August 1, 2024

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.
Majority:    MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.
Concurrence: STANFILL, C.J.

STATE OF MAINE

v.

MATTHEW A. DENNIS

MEAD, J.

[¶1]   Matthew A. Dennis appeals from a judgment of conviction for possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1-B)(A)(1) (2024), and violation of a condition of release (Class C), 15 M.R.S. § 1092(1)(B) (2022),[1] entered by the trial court (Penobscot County, *A. Murray, J.*) following a jury-waived trial.  Dennis contends that the court abused its discretion in fashioning a remedy for a discovery issue that arose during the trial by not dismissing the indictment or excluding evidence that Dennis's black-powder pistol had been test-fired by police six days before the

---

[1]  The statute has been amended, but the amendment does not affect this appeal.  P.L. 2023, ch. 293, § 1 (effective Oct. 25, 2023).

2

trial.  We disagree and affirm the judgment.

## I.  BACKGROUND

### A.    Facts

[¶2]  With support in the record, the court found, explicitly or implicitly,[2] that on June 8, 2022, Officer Seth Burnes of the East Millinocket Police Department went to 68 Elm Street in Millinocket after another officer relayed a concerned citizen's report that "they were at it again."  Burnes parked his cruiser and listened, eventually hearing elevated voices coming from 68 Elm Street that he recognized to be those of Matthew Dennis and the victim.  He knew that Dennis had been arrested for domestic violence and was under bail conditions to have no contact with the victim and not to be at her residence, which he knew to be 68 Elm Street.  Burnes called for backup and stood outside the residence, continuing to listen to Dennis and the victim argue.

[¶3]  After Officer Shawn Levasseur arrived, the tone of the argument "escalated very rapidly."  Burnes heard the victim say she was going to call the police; Dennis said, "[G]o ahead."  When the victim said that she wanted her phone back, Dennis said, "[W]hy do you think I took it?" and, "[I]f you call the

---

[2]  Because Dennis did not move for further findings of fact, "we will assume that the trial court made any findings necessary to support the judgment, provided that the findings are supported by competent record evidence."  *State v. Legassie*, 2017 ME 202, ¶ 46, 171 A.3d 589.

police, I'll tell them that you threatened to kill yourself." The voices continued to get louder, and Burnes heard what "sound[ed] like a scuffle." He then heard Dennis say, "[W]here's my gun?" Burnes next heard people loudly and rapidly coming down a set of stairs. He thought they were going toward the back of the house, so he went in that direction. He then heard Levasseur yell that "they were fighting at the front of the house."

[¶4] When he reached the front of the house, Burnes saw Dennis and the victim "engaged in a tussle" at the front door; the victim had Dennis in a bear hug from behind, pinning his arms to his side. Burnes drew his gun and ordered Dennis to show his hands, which he was initially unable to do because the victim had his arms pinned. Dennis then tucked his hands behind his back; Burnes feared that he was trying to reach for a gun and continued to order Dennis to show his hands. The victim eventually released Dennis, who immediately showed his hands.

[¶5] When he did, a balled-up jacket that Dennis had under his left arm fell to the ground. Levasseur retrieved and unrolled the jacket, which contained a bottle of Fireball whiskey, a pair of shoes, and a belt holster that held a black-powder pistol. The pistol, which appeared to have been fired and appeared to be operable, had a cylinder in which one chamber was empty and

4

more than one chamber contained a percussion cap, a metal ball, and a substance that held the ball in place in the chamber.

[¶6]  The officers arrested Dennis, who "made multiple statements . . . that he wasn't supposed to be there."

## B.    Procedure

[¶7]  A grand jury returned an indictment charging Dennis with possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1-B)(A)(1); violation of a condition of release (Class C), 15 M.R.S. § 1092(1)(B); and obstructing a report of crime or injury (Class D), 17-A M.R.S. § 758(1)(A), (3) (2024).

[¶8]  Dennis waived his right to a jury trial.  His motion to suppress evidence was denied.  The court held a bench trial on May 30, 2023.  When cross-examining Burnes about the gun recovered from Dennis's jacket, defense counsel asked:

Q:  And, again, you never fired it?

A:  I did not, no.

Q:  And you don't know for sure whether it's operable or not?

A:  Um—at this stage, I do, because, it has since been fired.

[¶9]  Dennis's counsel then advised the court, "[W]e have an issue in terms of discovery."  After the court took a recess so that the parties could confer, defense counsel represented to the court that (1) he was not aware that the gun had been tested; (2) the issue of whether the gun met the definition of a "firearm"[3] was "obvious from the discovery . . . because it was a black powder pistol"; (3) the test had been conducted on Wednesday, May 24, six days before the trial began on May 30, which was the Tuesday following Memorial Day; (4) the State had loaded the test result onto the ShareFile platform, which is used to provide discovery, on Friday, May 26;[4] and (5) neither he nor his assistant was in the office that Friday afternoon before the holiday weekend.

[¶10]  Defense counsel asked for a sanction of dismissal, or, alternatively, that evidence of the test be excluded, arguing that the case had been pending for almost a year and "to test [the gun] and then not give me even a full working day to have the discovery before trial is fundamentally unfair to my client's

---

[3]  *See* 15 M.R.S. § 393(7)(A) (2024) ("As used in this section . . . 'Firearm' has the same meaning as in Title 17-A, section 2, subsection 12-A.").  The referenced statute defines a "[f]irearm" as "any weapon, whether loaded or unloaded, which is designed to expel a projectile by the action of an explosive and includes any such weapon commonly referred to as a pistol, revolver, rifle, gun, machine gun or shotgun.  Any weapon which can be made into a firearm by the insertion of a firing pin, or other similar thing, or by repair, is a firearm."  17-A M.R.S. § 2(12-A) (2024).

[4]  Citrix™ ShareFile "is a proprietary online platform . . . whereby documents can be uploaded by one party in one location and downloaded by a second party in a second location."  Order Regarding Filing Using ShareFile, Me. Admin. Order JB-21-06 (as amended by A. 7-22) (effective July 5, 2022).

procedural rights."[5]  The State countered that the video of the test-firing had been provided to Dennis prior to trial via ShareFile and "[h]ad there been an issue, [the State] expected [defense counsel] to raise it before the trial started."

[¶11]  The court found,

Certainly this is one of the fundamental elements of the particular charge, meaning whether or not the gun meets the statutory definition for a conviction. . . . [O]bviously, it was test-fired very late.  The report came very late.  I don't fault [defense counsel] at all for not having seen it . . . without having been notified.

On the other hand, . . . under the circumstances of this case . . . dismissal or suppression is not needed.

The sanction, such as it will be, is that the State needs to facilitate [defense counsel] looking at the video . . . of the gun being fired immediately, and . . . the gun needs to be started from wherever it is now down to Bangor.  And if [defense counsel] wants to have the gun fired at a firing range, it needs to be done ASAP, and I do not want to delay the trial.  Mr. Dennis is in custody and has been waiting for this trial.

[¶12]  The court recessed while the parties again conferred and defense counsel watched the video of the test-firing.  The court then inquired of defense counsel: "I also indicated that as part of this that if you wanted to have a demonstration of the test-firing, I required the State to do that.  Is that

    5  Although Dennis appears to frame his argument as a constitutional violation, given the arguments developed in his brief, we construe his argument to be that the trial court abused its discretion in failing to dismiss the case or exclude the evidence of the test firing. *See State v. Page*, 2023 ME 73, ¶ 13 n.5, 306 A.3d 142.

something that . . . you or your client would like to take advantage of?" Counsel responded: "[T]he answer is we do not need that opportunity." Dennis preserved his objection to the admission of evidence of the test and continued to move for additional sanctions.[6]

[¶13] The trial continued with Officers Burnes and Levasseur testifying. Following closing arguments, the court found that Dennis had been in possession of a gun that met the statutory definition of a firearm and that he had violated his bail conditions by having contact with the victim. The court found Dennis guilty of possession of a firearm by a prohibited person and violation of a condition of release and not guilty of obstructing a report of crime or injury. After conducting the statutorily required sentencing analysis, the court entered judgment and sentenced Dennis to concurrent eight-month terms of imprisonment. *See* 17-A M.R.S. § 1602(1) (2024).

[¶14] Dennis timely appealed. *See* 15 M.R.S. § 2115 (2024); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶15] Dennis contends that the court's remedy for the issue he raised

---

[6] Dennis did not move for a mistrial, which, if granted, would have started the proceedings anew and allowed him to reassess his pretrial and trial strategies in light of the additional evidence that his gun was operable.

8

concerning the test-firing of his gun was insufficient and therefore admitting evidence of the test was error. We disagree because, as the court recognized, there was no discovery violation in the State's treatment of a test result that did not exist until two days before the State provided Dennis access to it.[7]

[¶16] The rule of criminal procedure governing automatic discovery requires that the State "provide . . . all matters set forth in this subdivision *that are within the possession or control of the attorney for the State*." M.R.U. Crim. P. 16(a)(1) (emphasis added). Here, defense counsel told the court, "Obviously, I don't think the State withheld anything from me up until [May] 24th because [the gun] had never been tested, so it's not . . . a violation in that sense." We agree with defense counsel's assessment.

[¶17] Accordingly, the court did not find a violation of M.R.U. Crim. P. 16; rather, it recognized that the test-firing result "came very late" and fashioned an appropriate remedy to address that situation. Recently, in discussing a defendant's challenge to an *actual* violation of the discovery rules involving— unlike here—potentially exculpatory evidence, we said that

> [w]e review for an abuse of discretion the sanctions imposed by a

---

[7] Maine Rule of Unified Criminal Procedure 16(b)(5) provides that "[i]f additional material that would have been furnished to the defendant as automatic discovery comes within the possession or control of the attorney for the State after the timeframes listed in subdivision (b)(1)-(4), the attorney for the State shall so inform the defendant within 14 days thereafter." The State's furnishing of the test result in two days, and prior to trial, was thus well within the Rule's requirement.

trial court to remedy a discovery or *Brady*[8] violation. A court may impose any of the sanctions listed in [M.R.U. Crim. P.] 16(e), up to and including dismissal with prejudice, but the sanction should be tailored to the individual circumstances of each case, with a focus on fairness and justice. We will vacate a trial court's choice of sanction only if it fails to remedy the violation to such an extent that the defendant is deprived of a fair trial.

*State v. Pelletier*, 2023 ME 74, ¶¶ 32-33, 306 A.3d 614 (footnote, citations, and quotation marks omitted). Put another way,

we look for a prejudicial effect on the defendant as a result of the discovery violation, as mitigated—or not—by the trial court's ruling. When a defendant contends that a discovery violation and the court's response to it violated his or her right to a fair trial, we review the trial court's procedural rulings to determine whether the process struck a balance between competing concerns that was fundamentally fair.

*State v. Page*, 2023 ME 73, ¶ 14, 306 A.3d 142 (alteration, citation, and quotation marks omitted).

[¶18] Here, the court's prudent action "sufficiently mitigated [the] prejudicial effect" of the late test-firing, *Pelletier*, 2023 ME 74, ¶ 34, 306 A.3d 614, which, as we have explained, did not constitute a discovery violation in the first instance. Dennis did not assert, and the court did not find, that the State acted in bad faith in the timing of the test-firing or its disclosure.[9]

---

8 *Brady v. Maryland*, 373 U.S. 83 (1963).

9 We agree with the State's concession at oral argument that the better practice would have been to conduct such testing earlier than the week prior to trial. Given the realities of large caseloads and

Furthermore, as Dennis acknowledged at oral argument, the ShareFile platform sends counsel an email notification when new materials are uploaded to it unless the sending party disables that step, and there is nothing in the record to indicate that the notification was not sent in this case.[10]

[¶19] Given that background, the court initially paused the trial so that defense counsel could watch the video of the test-firing and discuss it with Dennis. It then ordered that Dennis be given access to the gun and offered to pause the trial to give him an opportunity to conduct his own test-firing, an opportunity that he declined. Presumably, Dennis would have taken advantage of that opportunity if he thought further testing might result in exculpatory

---

late plea agreements, it may be that testing in this case was deferred until it was clear that a trial would be held—the record does not establish the reason for the timing of the test-firing. Nevertheless, testing that could be material to a potential trial issue—here the operability of the gun—should occur early enough so that the defendant may, if he or she wishes, take measures like those required by the trial court here. Although not required by rule, best practices would include giving opposing counsel an actual "heads-up" in addition to the automated notification provided by ShareFile when additional discovery is uploaded on the eve of trial; similarly, best practices would include defense counsel checking email and the ShareFile materials immediately prior to trial.

[10] Certainly, if he discovered that the ShareFile notification of the test-firing was not in his email box, the experienced defense attorney who represented Dennis in this case would have brought that fact to the trial court's attention—or appellate counsel would have brought it to ours. Even if, *arguendo*, the automatic notification was not sent—and there is no indication in the record that it had not been sent—Dennis did not challenge at trial, or at oral argument, the presumption that the test result would have been available to him had he checked ShareFile for current filings at any time after it was uploaded, including on the morning of trial. Knowledge of the test even at that point would have allowed Dennis to timely move for a continuance or some other remedy if he thought it necessary. We do not opine here on a scenario—not presented in this case—where it is established that the ShareFile automated notification has not been sent or received.

evidence.[11]  However, although he might have been surprised that the test-firing had taken place, Dennis could not have been surprised by its result, given that the gun belonged to him; it was loaded when the police took it; and Officer Burnes testified that it appeared to have been previously fired.

[¶20]  The concurrence posits that "there was a discovery violation," and therefore "the trial court erred when it failed to, at a minimum, exclude all evidence of the test firing."  Concurring Opinion ¶ 27.  It is incorrect on both points.

[¶21]  First, as we have noted, at trial Dennis did not, and on appeal does not, dispute that ordinarily the State's discovery obligations are met by uploading discovery to the ShareFile site, to which defense counsel has unfettered access. *See supra* ¶ 9 & n.4.  The issue in this matter turns on timing, namely the fact that the State's agents test-fired the gun during the week immediately prior to trial.  Defense counsel and his assistant who "downloads things" for him were "not around" on the Friday afternoon preceding the trial and did not review the ShareFile site in the interim.

---

[11] Even if the court had excluded the State's evidence of the test-firing, there was evidence in the record that could have supported a finding beyond a reasonable doubt that Dennis's gun met the statutory definition of a "firearm," which includes a "weapon, whether loaded or unloaded, which is designed to expel a projectile by the action of an explosive . . . includ[ing] any such weapon commonly referred to as a pistol, revolver, . . . [or] gun . . . . *Any weapon which can be made into a firearm . . . by repair*[] *is a firearm*."  17-A M.R.S. § 2(12-A) (emphasis added).

12

[¶22]  It bears repeating that the State, defense counsel, and we all agree that the best practice would have been for the State's attorney to deliver a separate "heads-up" to defense counsel prior to trial by inquiring, "Did you pick up the test-firing report that we uploaded last week?"  *See supra* n.9.

[¶23]  The failure to do so, however, does not *ipso facto* constitute a discovery violation.  The trial court did not so find,[12] and the invocation in the concurrence of M.R.U. Crim. P. 16(b)(5)—setting out the duty of the State's attorney to inform the defendant of additional discovery material within fourteen days of receipt—does not resolve the issue where the State and defense counsel both operate under the understanding that the State's uploading of discovery materials to ShareFile provides immediate transmission of discovery material and, simultaneously, automated notification to defense counsel of the existence and availability of those materials.  *See* Concurring Opinion ¶ 36.[13]

---

[12]  The trial court's "sanction, such as it will be," was clearly based on the court's finding that "[the gun] was test-fired very late.  The report came very late."  The trial court's remedy for the lateness of the test-firing, which the court did not characterize as a discovery violation, was to allow the defense a full opportunity to do whatever it deemed necessary to evaluate and address the test-firing results.

[13]  The obligations to "provide," M.R.U. Crim. P. 16(a)(1), and "inform," M.R.U. Crim. P. 16(b)(5), are largely synonymous when the issue boils down to an obligation to convey information.  We expressly reject the expansion of Rule 16 posited by the concurrence providing, in essence, that after uploading discovery to the ShareFile site in close proximity to a trial date, the uploading party— presumably either the prosecution *or* the defense—cannot rely upon the ShareFile automated notification and must independently confirm that the opposing party has retrieved the recent upload.

[¶24] The conclusion in the concurrence that a discovery violation occurred, Concurring Opinion ¶¶ 27, 39, and that the violation led to a process that "does [not] accord with any notion of fairness," Concurring Opinion ¶ 33, inexorably leads the concurrence to a conclusion that the trial court committed an abuse of discretion by "not . . . at least exclud[ing] the evidence." Concurring Opinion ¶ 39. That conclusion is wholly unsupported and unwarranted on this record.

[¶25] Second, as noted above, *see supra* ¶ 19, as the owner of the gun that had previously been fired, Dennis was well aware of the fact that it shoots.[14] Prior to receiving the test-firing results, he apparently planned to challenge that element of the offense at trial by pointing out that the gun had not been test-fired and therefore might not be operational—a dubious proposition at best given that testimony established it appeared to have been fired prior to the arrest and several cylinders were loaded with black powder charges that were capable of producing explosions that would expel a projectile. *See supra* ¶ 5, n.11. Far from losing a fundamental right, Dennis simply lost the opportunity

---

The concurrence would hold that failure to do so results, at a minimum, in the exclusion of the evidence. Concurring Opinion ¶ 39.

[14] At oral argument, Dennis agreed that the trial court "certainly" could have found from the evidence that the gun he dropped was operational, and the court did find that Dennis "was in possession of a gun" and that "the firearm meets the statutory definition of a firearm."

to challenge a point he knew was true: the gun was functional. Again, the conclusion in the concurrence that the State's late test-firing and subsequent uploading of the results to ShareFile—even with the trial court's comprehensive and commonsense remedial measures—resulted in an unfair process, Concurring Opinion ¶ 33, is unsupported by the record, rule, or precedent.

[¶26] We conclude that the court's careful and judicious actions, which were "tailored to the individual circumstances of [the] case," did not "fail[] to remedy the [issue of the lateness of the test firing] to such an extent that [Dennis was] deprived of a fair trial." *Pelletier*, 2023 ME 74, ¶ 33, 306 A.3d 614 (quotation marks omitted); *see* M.R.U. Crim. P. 1(c).

The entry is:

> Judgment affirmed.

_____

STANFILL, C.J., concurring

[¶27] I believe there was a discovery violation, and I believe the trial court erred when it failed to, at a minimum, exclude all evidence of the test-firing. There was other evidence that the gun was operable and no evidence it was inoperable, however, so evidence of the test-firing was

cumulative. I therefore concede that excluding the evidence would not have changed the result, and thus I cannot say that Dennis was deprived of a fair trial. *See State v. Matatall,* 2018 ME 155, ¶ 7, 196 A.3d 1293. For those reasons, I respectfully dissent from the Court's reasoning but concur in the result.

[¶28] When Officer Burnes drew his gun and ordered Dennis to show his hands, a jacket fell from under Dennis's left arm to the ground. Bundled in the jacket was a "late 18th century or 1800s" belt holster with a leather flap over a black-powder percussion pistol. Dennis was charged with and convicted of possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1-B)(A)(1) (2024), as well as violation of a condition of release (Class C), 15 M.R.S. § 1092(1)(B) (2022).

[¶29] As the trial court recognized, whether the pistol meets the statutory definition of a firearm is "one of the fundamental elements of the particular charge." We have explained that a "firearm" within the meaning of the statute "must be a real pistol, revolver or firearm and that it must be operable or readily capable of being made operable as a firearm." *State v. Millett*, 392 A.2d 521, 526 (Me. 1978). Although not the only defense Dennis raised, the operability of this antique pistol was clearly an issue in Dennis's trial.

16

[¶30]  Dennis filed a waiver of his right to a jury trial on May 12, 2023. On Tuesday, May 23, 2023, the court electronically sent a notice to counsel setting the case for bench trial on Tuesday, May 30, 2023.  Monday, May 29, 2023, was the Memorial Day holiday.  On Wednesday, May 24, with trial imminent, the State conducted a test-firing of the pistol.  The State did not notify counsel for Dennis or invite him to the test-firing.  Instead, two days later, on the Friday afternoon before Memorial Day weekend, with trial commencing the morning of the next business day, the State apparently loaded a copy of the video of the test-firing onto ShareFile, the electronic platform used to transmit discovery.  The State did not call, talk to, or otherwise directly inform defense counsel *at any time,* not even on the morning of trial, of the testing or the existence of the video.

[¶31]  The Court's opinion states that "as Dennis acknowledged at oral argument, the ShareFile platform sends counsel an email notification when new materials are uploaded to it unless the sending party disables that step, and there is nothing in the record to indicate that the notification was not sent in this case."  Court's Opinion ¶ 18.  In fact, at oral argument Dennis disputed whether email notifications are ordinarily sent and asserted that the notification is frequently disabled.  What is clear is that there is *no* evidence in

the record that defense counsel was informed of the upload. In fact, the only record evidence—evidence that is undisputed—is that defense counsel *did not know* about the test-firing or the video until his cross-examination of Officer Burnes during trial.[15]

[¶32] The Court nonetheless concludes, with little analysis, that "there was no discovery violation in the State's treatment of a test result that did not exist until two days before the State provided Dennis access to it." Court's Opinion ¶ 15. The Court refers to M.R.U. Crim. P. 16(b)(5) and simply asserts that "[t]he State's furnishing of the test result in two days, and prior to trial, was thus well within the Rule's requirement." Court's Opinion ¶ 15 n.7. Because the Court finds no discovery violation, its conclusion necessarily follows that no sanction was required.

[¶33] With this opinion, then, the Court blesses a process where the State can generate new information at any time before trial—or perhaps even during trial—so long as it mails or otherwise makes that information available to the

---

[15] Although many lawyers regularly work during evenings and on holiday weekends, I am not willing to routinely require it, particularly when we do not require it of ourselves. *See* M.R.U. Crim. P. 54(b) ("The office of the clerk . . . shall be open on all days except Saturdays, Sundays, legal holidays, and such other days as the Chief Justice of the Supreme Judicial Court may designate."); M.R. Civ. P. 77(c) (providing the same terms); Hours of Operation, Me. Admin. Order JB-05-4 (as amended by A. 3-23) (effective Mar. 30, 2023) (setting courthouse and Judicial Branch hours of operation).

18

defendant without ensuring that the defendant or counsel is actually informed of it. That is not consistent with the language or purpose of the rule, nor does it accord with any notion of fairness.

[¶34]   Maine Rule of Unified Criminal Procedure 16(a)(1), governing automatic discovery, establishes that "[t]he attorney for the State *shall provide*" certain information. (Emphasis added.)  In contrast, Rule 16(b)(5) governs the continuing duty to disclose, stating that "[i]f additional material that would have been furnished to the defendant as automatic discovery comes within the possession or control of the attorney for the State after the timeframes listed in subdivision (b)(1)-(4), the attorney for the State *shall so inform* the defendant within 14 days thereafter." (Emphasis added.)  The difference in language is significant: the continuing duty to disclose requires that the State's attorney actually inform the defendant of the new material, not just provide it by, for example, uploading to a shared file.

[¶35] The difference in the obligation is critical when, as here and all too often,[16] new information is obtained on the eve of trial.  The purpose of discovery is to "enhanc[e] the quality of the pretrial preparation of both the

---

[16]  Very recent cases before us involving the late disclosure of information by the State include *State v. Page*, 2023 ME 73, 306 A.3d 142, and *State v. Pelletier*, 2023 ME 74, 306 A.3d 614.

prosecution and defense and diminish[] the element of unfair surprise at trial, all to the end of making the result of criminal trials depend on the merits of the case rather than on the demerits of lawyer performance on one side or the other." *State v. Poulin*, 2016 ME 110, ¶ 29, 144 A.3d 574 (emphasis and quotation marks omitted). The primary concern of Rule 16, in the absence of bad faith on the part of the State, is to "protect the defendant from any unfair prejudice." *State v. Mylon,* 462 A.2d 1184, 1186 (Me. 1983).

[¶36] In contrast to the State's obligation to *provide* automatic discovery under Rule 16(a)(1), the State's obligation to *inform* the defendant of additional discovery later acquired under Rule 16(b)(5) serves an important purpose. Pursuant to the rules, both parties know that the State must provide automatic discovery at the beginning of every case, commonly by uploading to ShareFile. Defense counsel knows to access the automatic discovery without regard to any email notification.

[¶37] Defense counsel generally has no reason to know, however, when or if additional discovery is acquired or generated by the State unless actually so informed.[17] Email notification of the upload, in advance of trial, could

---

[17] Obviously, there are times when automatic discovery is incomplete and both parties expect additional information such as completed chemical testing of illegal drugs will be forthcoming. That is not this case, however, and does not change the analysis.

suffice—if it actually occurs. To hold otherwise imposes a duty on defense counsel to essentially check Sharefile every day separately for each case counsel has. In a legal system with overburdened and understaffed defense counsel, the Court's opinion requires an inefficient means to a simple end.

[¶38] Had the State ensured that defense counsel was aware of the video before the start of trial as it is required to do under Rule 16(b)(5), defense counsel could have moved to continue or to exclude the evidence. Negotiations and decisions whether to go to trial or accept plea offers are made based upon evaluating the strength of the evidence. Defense counsel was unaware of the test-firing until after jeopardy attached, however, so the options were limited.

[¶39] Because the State did not actually inform defense counsel about the new discovery as required by Rule 16(b)(5), I cannot agree there was no discovery violation. Moreover, given the timing, I believe it was an abuse of discretion not to at least exclude the evidence. Defense counsel argued to the trial court that it was "fundamentally unfair to [his] client's procedural rights" to allow the evidence to be admitted. Although the court erred in admitting the evidence about the test-firing, I cannot say that the defendant was deprived of a fair trial given the weight of the rest of the evidence, and for that reason I concur in the result.

Jeremy Pratt, Esq. (orally), and Ellen Simmons, Esq., Camden, for appellant Matthew A. Dennis

R. Christopher Almy, District Attorney, and Mark A. Rucci, Dept. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2022-1813
FOR CLERK REFERENCE ONLY