2000 ME 87

**STATE of Maine**

v.

**Glenn STINSON.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 26, 2000.
Decided May 17, 2000.

---

Norman R. Croteau, District Attorney, Jospeh O'Connor, Asst. Dist. Atty., South Paris, for State.

Stephen M. Brochu, Law Offices of William Maselli, Auburn, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Glenn Stinson appeals from a judgment entered in the Superior Court (Oxford County, *Warren, J.*) following a jury verdict finding him guilty of one count of criminal threatening with a dangerous weapon in violation of 17–A M.R.S.A. §§ 209,[1] 1252(4)[2] (1983) and one count of aggravated assault in violation of 17–A M.R.S.A. § 208 (1983). Stinson challenges only the former conviction, arguing that there was insufficient evidence to support a finding that the victim of the crime, Kenneth Jodrey, actually feared bodily injury when Stinson brandished a knife at him. We affirm.

[¶ 2] This case arises out of an incident that occurred approximately fifteen years ago in Andover. At around 8 p.m. on July 28, 1985, Kenneth Jodrey arrived at a general store located on the Andover common. Jodrey learned that his daughter, Alicia, was drinking beer in the gazebo on the common with Glenn Stinson and some of her friends. Alicia was 14 years old at the time; Stinson, on the other hand, was 34 years old and had supplied the beer he and the minors were drinking.[3] Jodrey was quite angry and immediately went out to the gazebo to collect Alicia. Alicia went with him to her mother's house. Jodrey

---

1. The statute provides: "A person is guilty of criminal threatening if he intentionally or knowingly places another person in fear of imminent bodily injury." 17–A M.R.S.A. § 209(1) (1983).

2. The statute provides: "If the State pleads and proves that a Class B, C, D or E crime was committed with the use of a dangerous weapon then the sentencing class for such crime is one class higher than it would otherwise be." 17–A M.R.S.A. § 1252(4) (1983). The use of a dangerous weapon changes criminal threatening from a Class D to a Class C crime. *See id.;* 17–A M.R.S.A. § 209(2) (1983).

3. Despite the age differential, the State did not provide any evidence that indicated that Stinson was aware that Alicia Jodrey was under sixteen years old.

did not stay long and left the house soon after he dropped Alicia off.

[¶ 3] By about 9 p.m., Jodrey had returned to the front of the store. Jodrey was still angry. Stinson had left the common and was at the store either when Jodrey arrived or shortly thereafter. When Jodrey saw Stinson, he walked up to Stinson and warned him against ever giving alcohol to Alicia in the future. Jodrey "put his finger in [Stinson's] chest, and just told him that he didn't want him around his daughter again." Though Jodrey pointed his finger at Stinson's chest, he never actually struck Stinson. Stinson pulled out a jackknife, opened the knife and pointed it at Jodrey. Jodrey and Stinson were virtually nose to nose when Stinson pulled out the knife. Jodrey tried to get the knife away from Stinson, and the two men began wrestling for control of the weapon. Both men fell to the ground. The scuffle ended when Jodrey took the knife. Jodrey told Stinson to "Remember what I said, Glenn," and turned to leave. As Jodrey was walking away, Stinson picked up a board and hit Jodrey from behind.[4]

[¶ 4] The State Police arrested Stinson. Stinson was released on bail and left Maine in August of 1985. He claimed that he left the state to save enough money to hire a lawyer, even though he knew that a lawyer would be appointed for him if he could not afford it. In October of 1985, Stinson was indicted on three counts: criminal threatening with a dangerous weapon, aggravated assault, and endangering the welfare of a minor.[5] The day after the indictment, a warrant for Stinson's arrest issued. In May of 1997, Jodrey died; Stinson knew of Jodrey's death. In February of 1999, more than thirteen years after leaving Maine and defaulting on his bail, Stinson returned to Maine and voluntarily surrendered for trial.

[¶ 5] Stinson was tried before a jury. At the close of the State's case in chief, Stinson moved for a judgment of acquittal on the criminal threatening count. The court denied the motion, rejecting Stinson's argument that there was no evidence that Jodrey felt any fear and that, furthermore, that element of the crime "cannot be proven in the absence of the victim." The jury returned a verdict of guilty of both criminal threatening and aggravated assault, and the court entered judgments on the verdicts.[6] Although Stinson was convicted of both aggravated assault and criminal threatening with a dangerous weapon, he appeals from only the criminal threatening conviction.

[¶ 6] Stinson challenges the denial of his motion to acquit. "When the improper denial of a motion to acquit is alleged, the question before us is whether there was legally sufficient evidence to support the guilty verdict." *State v. Fox,* 494 A.2d 177, 179 (Me.1985). The motion to acquit presents a single legal question, whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Van Sickle,* 434 A.2d 31, 34 (Me.1981) (emphasis in

---

4. It was this action that formed the basis for the aggravated assault charge. Taking the evidence in the light most favorable to the verdict. Stinson hit Jodrey repeatedly with the board, knocking him down in an alley that contained broken glass and other debris. Jodrey was knocked unconscious, but Stinson continued hitting him until a bystander pulled Stinson away. Jodrey was taken to the hospital where he was treated for his injuries, which included reattaching part of his ear that had been damaged in the attack.

5. The trial court granted Stinson's motion for acquittal on this count at the close of the State's case in chief.

6. Stinson was sentenced to 18 months imprisonment for criminal threatening and six years imprisonment for aggravated assault, to be served concurrently. All but two years were suspended. Stinson was also given a two year term of probation. Stinson applied for leave to appeal his sentence, but his application was denied by the Sentence Review Panel.

original). This analysis considers only the factual evidence and permissible inferences that were placed before the factfinder; we do not weigh the evidence or credibility of witnesses, but instead resolve ambiguities in favor of the State. *See State v. Harrington,* 440 A.2d 1078, 1079 (Me.1982). In evaluating whether there is sufficient evidence to convict, we will review the evidence as a whole, including any defense witnesses and rebuttal witnesses, to determine if the trial court erred. *See State v. Bridges,* 413 A.2d 937, 940 n. 1 (Me.1980).

[¶ 7] One of the essential elements of criminal threatening is that the defendant put "another person in fear of imminent bodily injury." 17–A M.R.S.A. § 209(1) (1983). Stinson argues that, at most, the evidence supports the conclusion that a rational person in Jodrey's position would have felt fear; this is insufficient, Stinson argues, because his conviction must be predicated upon a finding that Jodrey experienced actual, subjective fear.

██ [¶ 8] We do not need to decide whether a conviction could be supported only by evidence that a rational person in Jodrey's position would have felt fear. Stinson's analysis of the evidence rests upon the flawed argument that direct evidence of Jodrey's fear was required for a rational factfinder to conclude that Jodrey was put in fear because of Stinson's actions. A factfinder, however, is entitled to "draw all reasonable inferences from the evidence." *State v. Child,* 1999 ME 198, ¶ 5, 743 A.2d 230, 232. Circumstantial evidence is not, as a matter of law, inherently inferior evidence; factual findings may be supported by reasonable inferences drawn from all the circumstances even if those inferences are contradicted by parts of the direct evidence. *See State v. Hagan,* 527 A.2d 1308, 1309 (Me.1987) (holding that victims can be in fear despite their refusal "to admit to anything smacking of cowardice"). The jury was instructed that they could convict if they found that Jodrey had felt actual, subjective fear. Though the victim was not available to testify to his

state of mind, the evidence was sufficient to support a finding in accord with the court's instruction.

The entry is:

Judgment affirmed.