MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2025 ME 32
Docket:      Han-23-466
Argued:      October 8, 2024
Decided:     March 27, 2025

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

STATE OF MAINE

v.

CRAIG A. WOODARD

STANFILL, C.J.

[¶1]  Craig A. Woodard appeals from a judgment of conviction and his sentence for elevated aggravated assault, aggravated assault, and assault entered by the trial court (Hancock County, *Larson, J.*) after a jury trial.  At sentencing, the court found that the State had pleaded and proved that the offense of elevated aggravated assault was committed with the use of a firearm and imposed the statutory mandatory minimum sentence of four years' imprisonment, 17-A M.R.S. § 1604(3)(A) (2024).  The court merged the offenses and sentenced Woodard to twelve years' imprisonment with all but five years suspended and three years of probation.  Woodard argues that the court erred in failing to give jury instructions regarding defense of another.  He also argues that the court erred when it applied the mandatory minimum sentence for a

2

Class A offense committed with a firearm and considered Woodard's age and lack of remorse as aggravating factors. We disagree and affirm.

## I. BACKGROUND

[¶2] Woodard and the victim "met" over Facebook. They engaged in verbal altercations over Facebook Messenger, ultimately escalating into a "scheduled fight" to occur at Woodard's home. Woodard gave the victim his address and invited him to a fistfight where the two could resolve their issues "like gentlemen." The victim accepted the invitation and traveled to Woodard's address with three friends.

[¶3] When the victim arrived at Woodard's address, he saw Woodard and his father standing outside. The victim initially remained on the public road and yelled at Woodard, who was telling him to come further down the driveway to fight. The victim stood with his hands out to the side, with his open and empty hands visible. He proceeded a short distance down the way toward Woodard, believing that if he fought on public rather than private property, he was "pretty well safe." When Woodard refused to come up the driveway towards him, the victim announced that he had gone far enough and was leaving because Woodard refused to come fight him.

[¶4]  At that point, Woodard stepped behind a tree, grabbed a gun, and fired a total of six shots in the victim's direction.  The victim turned and started running back toward the public road.  Woodard's fourth shot struck the victim just below his buttock.

[¶5]  The victim thought he had been struck in the femoral artery and believed he was going to die due to the amount of blood loss.  He got in the car with his friends, and they sped toward the hospital.  A police officer met them on the way and applied a tourniquet to the victim's wound.

[¶6] Woodard was charged with elevated aggravated assault by criminal complaint on May 8, 2020.  He was then indicted on October 13, 2020, and charged with elevated aggravated assault (Class A) (Count 1), 17-A M.R.S. § 208-B(1)(A) (2024); aggravated assault (Class B) (Count 2), 17-A M.R.S. § 208(1)(B) (2024); and assault (Class D) (Count 3), 17-A M.R.S. § 207(1)(A) (2024).  A jury trial was held on April 11, 2023, and the jury found Woodard guilty on all three counts.  Woodard moved for a judgment of acquittal on April 25, 2023; the motion was denied after hearing on May 19, 2023.  On November 17, 2023, the court sentenced Woodard to twelve years' imprisonment with all but five years suspended and three years of probation.[1]

---

[1]  The initial judgment and commitment, dated November 17, 2023, sentenced Woodard to 12 years on each count, with Counts 2 and 3 to run concurrently to Count 1.  On December 12, 2023,

4

[¶7]  Woodard timely filed an appeal from the judgment, *see* M.R. App. P. 2B(b)(1), and sought leave to apply for sentence review, which the Sentence Review Panel granted on January 31, 2024, *see* 15 M.R.S. § 2151 (2024), M.R. App. P. 20.  Pursuant to M.R. App. P. 20(g)-(h), the two appeals were consolidated, and we consider Woodard's sentence appeal together with his appeal from the judgment of conviction.

## II.  DISCUSSION

### A.   Jury Instructions Regarding Defense of a Third Person and Duty to Retreat

[¶8]  At Woodard's request, the court determined that the issue of self-defense was generated by the evidence and instructed the jury accordingly. *See* 17-A M.R.S. § 108(2)(A)(1) (2024).  Woodard now argues that the evidence also generated an issue of defense of third persons, specifically that because his girlfriend and daughter were on the premises, the court erred in failing to so instruct the jury.  Additionally, he contends that there was no duty to retreat if the jurors found that Woodard was acting to defend his family in their home.

---

the court issued an amended judgment and commitment, sentencing Woodard on Count 1 to twelve years with all but five years suspended and three years of probation, and merging Counts 2 and 3 into Count 1.

*See id.* § 108(2)(C)(3)(a). At trial, Woodard did not request these instructions or object to the court's failure to give them.

[¶9] Because the claimed errors in the instructions are admittedly unpreserved, Woodard argues that we should review the court's failure to give these jury instructions for obvious error. *See State v. Williams*, 2020 ME 17, ¶ 24, 225 A.3d 751. On this record, however, it appears that the issue is not only unpreserved but waived by Woodard. "If a defendant explicitly waives the delivery of an instruction or makes a strategic or tactical decision not to request it, we will decline to engage in appellate review, even for obvious error." *State v. Nobles*, 2018 ME 26, ¶ 34, 179 A.3d 910.

[¶10] Following an instructions conference and before the court instructed the jury, defense counsel stated on the record that the proposed instructions were acceptable. He also asked to explain on the record and in Woodard's presence why additional instructions were not requested. Referring to defense of property under 17-A M.R.S. § 104 (2024), he stated:

> Essentially, the same standards apply as in [section] 108. I've decided that *it's in his best interest not to make the case seem more complex than it is*, and, so, I'm not raising a [section] 104 defense *along with other items*. That's my judgment. It's a strategy call. It could be reviewed by others who would disagree with my strategy. But, nonetheless, I have -- that's my call. I've explained it to him, and I believe he accepts my judgment.

6

(Emphasis added.) Following up on counsel's comments, the court explained to Woodard that counsel was making a strategic choice and asked Woodard three times on the record if he understood and was satisfied with defense counsel's strategy. Three times Woodard agreed that he understood and was satisfied. Although defense counsel did not specify defense of others in his explanation, it is clear that, with Woodard's agreement, he strategically decided to rely solely upon self-defense so as not to confuse the issues. And indeed, self-defense is what was argued to the jury.

[¶11]  We have noted that the trial court "is not required to instruct on an affirmative defense that has been waived by the defendant." *State v. Ford*, 2013 ME 96, ¶ 16, 82 A.3d 75; *see* 17-A M.R.S. § 101(1) (2024). Under all the circumstances, we find that the issue of defense of others is not merely unpreserved but waived, and we decline to address it on appeal.[2]

---

[2]  Even if we were to address it, we would affirm the trial court's judgment. "[T]he trial court should not give instructions on the law of self-defense nor submit the issue for jury consideration unless and until there is substantial evidence, which, when viewed in the light most favorable to the defendant, would, if believed, permit the jury to entertain a reasonable doubt of guilt based upon a claim of self-defense." *State v. O'Brien*, 434 A.2d 9, 13 (Me. 1981) (quotation marks omitted). Under 17-A M.R.S. § 108(2)(A)(1) (2024), a person is justified in using deadly force "[w]hen the person reasonably believes it necessary and reasonably believes such other person is . . . [a]bout to use unlawful, deadly force against the person *or a 3rd person*." (Emphasis added.) Although the court gave a self-defense instruction, the evidence did not generate facts to support Woodard's use of deadly force in self-defense. "Neither th[e] evidence nor any reasonable inferences that can be drawn from it support a reasonable hypothesis that the victim was 'about to use unlawful, deadly force against'" Woodard. *State v. Delano*, 2015 ME 18, ¶ 28, 111 A.3d 648 (alteration omitted) (quoting 17-A M.R.S. § 108(2)(A)(1)). Viewing the evidence in the light most favorable to Woodard, the victim had previously made threats on Facebook along the lines of "I'm going to kill your whole family." The

## B.    Application of Mandatory Minimum Sentence

[¶12]    Count 1 of the indictment charged Woodard with elevated aggravated assault, Class A, alleging that he "did intentionally or knowingly cause serious bodily injury to [the victim] with the use of a dangerous weapon, *a handgun*," in violation of 17-A M.R.S. § 208-B(1)(A).  (Emphasis added.)  Upon Woodard's conviction on that charge,[3] the court relied upon 17-A M.R.S. § 1604(3) to determine that a minimum sentence of four years was mandatory. Section 1604(3)(A) states: "If the State pleads and proves that a Class A, B or C crime was committed with the use of *a firearm* against an individual, the minimum sentence of imprisonment, which may not be suspended" is four years for a Class A crime.  (Emphasis added.)  "We review the legality and constitutionality of a sentence de novo."  *State v. Lopez*, 2018 ME 59, ¶ 13, 184 A.3d 880 (quotation marks omitted).

---

undisputed evidence at the time of the altercation, however, was that the victim lacked any weapon, showed his open hands to Woodard, never got close to Woodard or any other family members, did not see any of Woodard's family members (aside from his father who was outside) or even know if they were present, and was only briefly present at the property.  Like the defendant in another case, Woodard "introduced the *only* deadly force to the situation," thus "eliminat[ing] any possibility that a defense based on [Woodard's] belief that [the victim] was about to use deadly force could have succeeded."  *Cardilli v. State*, 2024 ME 25, ¶ 36, 314 A.3d 224 (quotation marks omitted).  Because there was no error in failing to instruct the jury about the use of deadly force in defense of others, there was also no error in failing to discuss the lack of a duty to retreat.  *See* 17-A M.R.S. § 108(2)(C)(3)(a).

    3  The jury found Woodard guilty on all three charges, but because the charges were merged for sentencing, we need address only the sentence for elevated aggravated assault.

[¶13]  Woodard contends that the mandatory minimum sentence should not have been applied because the State did not plead or prove beyond a reasonable doubt that the offense was committed with the use of a firearm. Specifically, Woodard argues that the State did not include the statutory reference in the indictment and that it alleged Woodard used a "handgun" and not a "firearm."  Both defects, according to Woodard, mean the four-year mandatory sentence does not apply.  We disagree.

[¶14]  "[A]n indictment must be 'a plain, concise, and definite written statement of the essential facts constituting the crime charged.'"  *State v. Pelletier*, 2023 ME 74, ¶ 28, 306 A.3d 614 (quoting M.R.U. Crim. P. 7(c)); *see also State v. Davenport,* 326 A.2d 1, 9 (Me. 1974) ("The State must allege in an indictment every essential element of the crime sought to be charged; it must set out the facts which constitute the necessary ingredients of the offense."); *State v. Dunn*, 136 Me. 299, 301, 8 A.2d 594, 596 (1939) ("The leading rule for all indictments on statutes is to embody in allegation all the elements necessary to constitute the offense, either in the words of the statute, or in language which is its substantial equivalent").  When, as here, there are facts triggering a mandatory minimum sentence, "each element . . . must be submitted to the jury."  *Alleyne v. United States*, 570 U.S. 99, 113 (2013).

[¶15]  Woodard's argument regarding the failure to cite the sentencing statute in the indictment is easily dispensed with: the statutory citation in the caption of the indictment is not part of the charge.  *See State v. Pierce*, 438 A.2d 247, 254 (Me. 1981) ("The entries therein form no part of the indictment and neither add to nor take away from the legal effect of the charge as contained in the body of the indictment.").  While a statutory reference can be helpful, an indictment is legally sufficient if it "adequately apprise[s] a defendant of reasonable and normal intelligence of the act charged, enabling him to defend himself and, upon conviction or acquittal, to make use of the judgment as the basis for a plea of former jeopardy."  *State v. Brooks*, 656 A.2d 1205, 1207 (Me. 1995) (quotation marks omitted).  Because it alleged all the essential elements of the offense, the indictment here is sufficient and causes no constitutional error despite the lack of citation to the sentencing statute.  *See, e.g.*, *Davenport*, 326 A.2d at 9; *Dunn*, 136 Me. at 301, 8 A.2d at 596.

[¶16]  The next question is whether the allegation that the dangerous weapon was "a handgun" is adequate to apprise "a defendant of reasonable and normal intelligence . . . that if he were convicted of the offense as alleged in the [indictment], he would be subject to the enhanced mandatory sentencing" for committing the offense with a firearm.  *Brooks*, 656 A.2d at 1208.

[¶17]   We first note that the jury was specifically instructed that "dangerous weapon," as that term is used in the crime of elevated aggravated assault, 17-A M.R.S. § 208-B(1)(A), includes a firearm, *see* 17-A M.R.S. § 2(9) (2024).  Second, the only weapon used here undoubtedly meets the definition of a "firearm."  *See id.* § 2(12-A) ("'Firearm' means any weapon, whether loaded or unloaded, which is designed to expel a projectile by the action of an explosive and includes any such weapon commonly referred to as a pistol, revolver, rifle, gun, machine gun or shotgun.").  Third, a "handgun" is commonly understood to be a type of firearm. *See Handgun*, Webster's New College Dictionary (5th ed. 2016) (defining "handgun" as "any firearm, as a pistol, designed to be held and used with one hand.").  Indeed, Woodard suggests no other possible meaning of the word "handgun."   Finally, the evidence at trial was overwhelming and undisputed that Woodard used a firearm and there was no testimony as to any other weapon that could fall within the definition of a "dangerous weapon." Thus, given that the jury returned a guilty verdict, it must have found all the necessary facts: that Woodard (1) acted intentionally or knowingly, (2) caused serious bodily injury to the victim, (3) did so with the use of a dangerous weapon, and (4) the dangerous weapon was a firearm.

[¶18] As with the allegation of a prior conviction to increase the sentence in *Brooks*, "the only logical reason for alleging" that the dangerous weapon used here was a handgun "is to secure an enhanced mandatory sentence." 656 A.2d at 1208. We are satisfied that the allegation that the dangerous weapon was "a handgun" is adequate to apprise Woodard that if he were to be convicted, he would be subject to the mandatory sentence for committing the offense with a firearm. Therefore, the court properly determined that the mandatory minimum sentence was required because the necessary facts were in the indictment, included in the instructions to the jury, established by the evidence, and found by the jury.

## C. Age as an Aggravating Factor for Sentencing

[¶19] Woodard argues that the court improperly and unlawfully increased his maximum sentence because he was thirty years old at the time of the shooting. The State responds that it is appropriate for the court to consider the defendant's age as part of the process of individualized sentencing.

[¶20] The Legislature has explicitly "encourage[d] differentiation among persons with a view to a just individualization of sentences." 17-A M.R.S. § 1501(6) (2024). To achieve this objective, a sentencing court "shall employ" a three-step process when imposing a sentence for any offense other than

murder. 17-A M.R.S. § 1602(1) (2024). After setting a basic sentence in the first step, in the second step the court individualizes the sentence by considering both aggravating and mitigating factors to set a maximum term of imprisonment. *See id.*; *State v. Ketcham*, 2024 ME 80, ¶ 34, 327 A.3d 1103; *State v. Hewey*, 622 A.2d 1151, 1154 (Me. 1993). "In determining the appropriate degree of mitigation or aggravation of an offender's basic period of incarceration the court may consider any evidence that is factually reliable and relevant." *Hewey*, 622 A.2d at 1154.

[¶21] We "afford the court significant leeway in what factors it may consider and the weight any given factor is due when determining a sentence." *State v. Bentley*, 2021 ME 39, ¶ 11, 254 A.3d 1171; *see also State v. Hamel*, 2013 ME 16, ¶ 5, 60 A.3d 783; *State v. Reese*, 2010 ME 30, ¶ 28, 991 A.2d 806. "We review the trial court's application of aggravating and mitigating factors in determining the maximum sentence for abuse of discretion." *State v. Bates*, 2003 ME 67, ¶ 25, 822 A.2d 1129.

[¶22] In the second step of the *Hewey* analysis, the court considered Woodard's age, stating, "the defendant's age at the time of the incident is significant to the Court. He was 30 years old at the time of the incident. This is not a youthful indiscretion." Youthful age is frequently considered a mitigating

factor, but we note that the absence of a mitigating factor does not mean it is an aggravating factor. If age is not a mitigating factor, there should be something specific to the facts of the case or the characteristics of the defendant to be able to consider age to be an aggravating factor.

[¶23] Here, the court considered Woodard's age in noting that "[t]his is not a youthful indiscretion." An 18-year-old engaging in Facebook taunts and arranging to fight could be viewed as more characteristic of youth, before the full formation of executive function. *See Ketcham*, 2024 ME 80, ¶ 36, 327 A.3d 1103. Engaging in such behavior at age 30 may indicate a greater degree of baked-in criminality. And, while including Woodard's age as a factor, the court appeared to give it relatively little weight, as it stated that the "most significant [aggravating factor] would be the actual victim impact." We cannot say the court abused its discretion in considering age as an aggravating factor.

## D. Failure to Accept Responsibility and Lack of Remorse as an Aggravating Factor

[¶24] Woodard argues that the court also erred when it increased his sentence at step two because it attributed arguments made in defense counsel's sentencing memorandum to him personally, and the court should not have made its sentencing decision based upon defense counsel's work.

[¶25] "[C]hoosing to allocute constitutes a limited Fifth Amendment waiver, and . . . the lack of remorse expressed in an allocution may be considered as a factor in sentencing." *State v. Coleman*, 2024 ME 35, ¶ 26, 315 A.3d 698; *see State v. Moore*, 2023 ME 18, ¶ 25, 290 A.3d 533 (noting the difference between increasing a sentence based on the exercise of the right to trial and considering specific information learned during the proceedings in determining the genuineness of a defendant's claim of remorse or responsibility.)

[¶26] Contrary to Woodard's argument, the court explicitly and appropriately considered statements made by Woodard, not his attorney, in finding a lack of responsibility and remorse. Woodard wrote a letter to the court that was included as part of counsel's sentencing memorandum. In that letter, Woodard wrote, "I would like to take the time to address the court and apologize for the misunderstanding that led to my actions that took place that evening." Additionally, Woodard stated during his allocution that "I misunderstood my rights and misunderstood the situation." The court noted, "It's the statement that [Woodard] makes in this sentencing memorandum that has the most concern for the Court. He refers to it as a misunderstanding, and even today he continues to refer to it as a misunderstanding." The court

specified that its finding of a lack of remorse and acceptance of responsibility was distinct from Woodard's choice to have a trial: "The Court does find that there was a lack of responsibility and remorse in that statement. The Court's not finding that the fact that he had a trial is a lack of responsibility or acceptance of responsibility. Defendant had every right to have a trial. He exercised that right. But it's the statement that he makes in this sentencing memorandum that has the most concern for the Court." The court properly relied upon Woodard's statements in his letter to the court and in his allocution when it found that he failed to accept responsibility and lacked remorse, and it was not an abuse of discretion to consider this as an aggravating factor in the sentencing analysis.

## III. CONCLUSION

[¶27] We do not consider whether the court erred in failing to instruct the jury on defense of third parties because Woodard waived that issue and, in any event, the evidence did not generate the instruction. With regard to the sentence, the court did not err in applying the mandatory minimum sentence for elevated aggravated assault committed with a firearm, nor did it err in considering Woodard's age and lack of remorse as sentencing factors.

The entry is:

Judgment and sentence affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Craig A. Woodard

Toff Toffolon, Dep. Dist. Atty. (orally), Office of the District Attorney, Ellsworth, for appellee State of Maine

Hancock County Unified Criminal Docket docket number CR-2020-450
FOR CLERK REFERENCE ONLY