MAINE SUPREME JUDICIAL COURT　　　　　　　　Reporter of Decisions

Decision:　　　2025 ME 88
Docket:　　　　Ken-24-447
Argued:　　　　June 4, 2025
Decided:　　　 August 29, 2025

Panel:　　　　 STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

## STATE OF MAINE

v.

## HEATHER M. HODGSON

DOUGLAS, J.

[¶1]  In this consolidated appeal, Heather M. Hodgson appeals from a judgment of conviction for domestic violence reckless conduct with a dangerous weapon (Class C), 17-A M.R.S. §§ 211-A(1)(A), 1604(5)(A) (2025); domestic violence criminal threatening with a dangerous weapon (Class C), 17-A M.R.S. §§ 209-A(1)(A), 1604(5)(A) (2025); and endangering the welfare of a child (Class D), 17-A M.R.S. § 554(1)(C) (2025), entered by the trial court (Kennebec County, *Stokes, J.*) after a nonjury trial.  The State appeals pursuant to 15 M.R.S. § 2115-A(2-B) (2025) and M.R.U. Crim. P. 35(g) from the court's denial of its Rule 35 motion to correct the sentence for domestic violence reckless conduct with a dangerous weapon.

2

[¶2]  Hodgson contends that the evidence was insufficient to support her convictions.  We determine otherwise and affirm the judgment of conviction.  Because we conclude, however, that the court's sentence does not reflect the mandatory minimum one-year term of imprisonment for domestic violence reckless conduct with a dangerous weapon, *see* 17-A M.R.S. § 1604(3)(C), we must vacate the sentence and remand for resentencing.

## I.  BACKGROUND

[¶3]  On February 6, 2023, the State charged Hodgson by complaint with domestic violence reckless conduct with a dangerous weapon (Class C), 17-A M.R.S. §§ 211-A(1)(A), 1604(5)(A), based upon allegations that Hodgson purposely discharged a firearm as a "warning shot" after she and the victim, her husband at the time, had an argument about alcohol.

[¶4]  On April 21, 2023, a Kennebec County grand jury indicted Hodgson on six charges: attempted elevated aggravated assault (Class B), 17-A M.R.S. §§ 152(1)(B), 208-B(1)(A) (2025) (Count 1);[1] attempted aggravated assault (Class C), 17-A M.R.S. §§ 152(1)(C), 208(1)(B) (2025) (Count 2);[2] domestic

---

[1]  Before trial, the State dismissed Count 1.

[2]  The indictment, even as subsequently amended, cites the wrong statute for Count 2.  It is 17-A M.R.S. § 208 (2025)—not 17-A M.R.S. § 208-B (2025)—that defines the crime of aggravated assault.  The citation is irrelevant to this appeal, however, because Hodgson was acquitted of this charge.

violence reckless conduct with a dangerous weapon (Class C), 17-A M.R.S. § 211-A(1)(A), 1604(5)(A) (Count 3); domestic violence criminal threatening with a dangerous weapon (Class C), 17-A M.R.S. §§ 209-A(1)(A), 1604(5)(A) (Count 4); domestic violence reckless conduct with a dangerous weapon (Class C), 17-A M.R.S. §§ 211-A(1)(A), 1604(5)(A) (Count 5); and endangering the welfare of a child (Class D), 17-A M.R.S. § 554(1)(C) (Count 6). The indictment was later amended to correct minor typographical errors not relevant here.[3]

[¶5] Hodgson waived her right to a jury trial.

[¶6] A bench trial was held on June 17 and 18, 2024. The State offered testimony from the victim and the responding officer, recordings of two 9-1-1 calls, several photographs of the scene, and a recording from the responding officer's body camera. At the close of the State's case-in-chief, Hodgson moved for a judgment of acquittal. The court granted the motion as to Counts 2 and 5. Hodgson then testified, substantially corroborating the victim's version of events except that she claimed that she had acted in self-defense and denied

---

[3] After the events that formed the basis for the charges in this case, the Legislature amended 17-A M.R.S. § 209-A(1)(A) (2023) and 17-A M.R.S. § 211-A(1)(A) (2023) to include acts against a "dating partner" within the definitions of domestic violence crimes. P.L. 2023, ch. 465, §§ 7, 13 (effective Oct. 25, 2023) (codified at 17-A M.R.S. §§ 209-A(1)(A), 211-A(1)(A) (2025)). The amendments do not affect this appeal, and we cite the current statutes.

that she had pointed the firearm at him. After closing arguments, the court took the matter under advisement.

[¶7] The court delivered its verdict orally from the bench the following day. The court found Hodgson guilty on the remaining counts—Counts 3, 4, and 6—and rejected Hodgson's claim of self-defense, finding her testimony that she was in fear for her life not credible. The court made the following findings, which are fully supported by competent evidence in the record.

[¶8] On February 3, 2023, Hodgson, the victim, and their two children were at home. At some point during the day, the victim went to the grocery store and purchased alcohol; this upset Hodgson because she did not want alcohol in the home. Nevertheless, both Hodgson and the victim consumed some of the alcohol. At around 7:30 p.m., "things turned unpleasant" and Hodgson and the victim began arguing. At one point, their three-year-old child got up from bed to ask them to stop fighting.

[¶9] The victim went downstairs to the bedroom he shared with his wife to go to bed. Soon thereafter Hodgson went to the bedroom and demanded that the victim get rid of the alcohol. The victim got up, went upstairs to the kitchen, and poured out the alcohol, leaving the bottles in the kitchen sink. After he returned to bed, Hodgson went back into the bedroom and demanded that he

get rid of the bottles. The victim got up again, swore at Hodgson, removed his wedding ring, and threw the ring at her.

[¶10] After disposing of the bottles in an outside trash bin, the victim attempted to re-enter the house but felt resistance from the door. He pushed the door open only to encounter Hodgson standing there with a gun in her hand, pointed directly at him. Hodgson told him that he needed to leave. He agreed and went to the parties' bedroom to get his phone, wallet, and keys. Hodgson followed, still pointing the gun at the victim. When the victim attempted to pick up his phone from the floor, Hodgson deliberately fired what she referred to as a "warning shot" at the floor a few inches from where he was standing. The hollow-point round disintegrated when it hit the floor. The victim then disarmed Hodgson and called 9-1-1.

[¶11] On July 29, 2024, the court held a sentencing hearing. A month before the hearing, the State filed a sentencing memorandum. The State recommended a sentence of four years of imprisonment, with all but two years suspended, and four years of probation on Count 3, the charge of domestic violence reckless conduct.[4] The State argued that because Hodgson used a

---

[4] The State recommended that the court impose a two-year concurrent sentence on Count 4 and a 270-day concurrent sentence on Count 6.

6

firearm in the commission of this Class C offense, a one-year mandatory minimum term of imprisonment applied pursuant to 17-A M.R.S. § 1604(3)(C).[5]

[¶12]  At the sentencing hearing, Hodgson argued that the court should impose a sentence of three years of imprisonment, with all but thirty days suspended, and four years of probation.  Regarding the mandatory minimum sentence, Hodgson argued that the State's pleading was insufficient to invoke section 1604(3)(C) because the caption of Count 3 failed to cite 17-A M.R.S. § 1604(3)(C) and Count 3's language failed to track the language used in section 1604(3).  Hodgson further argued that she did not use the firearm in a manner that would trigger the mandatory minimum because she fired the gun at the floor and not at the victim.

[¶13]  After considering the parties' arguments and listening (during a break in the proceeding) to the previous day's courtroom recording of its delivery of the verdict, the court declined to impose the mandatory minimum one-year sentence prescribed in 17-A M.R.S. § 1604(3)(C).  The court accepted that the key sentencing fact in section 1604(3)(C)—that a firearm was used "against an individual"—was sufficiently pleaded but stated that it "never made

---

[5] Title 17-A M.R.S. § 1604(3)(C) (2025) provides, in relevant part:  "If the State pleads and proves that a Class A, B or C crime was committed with the use of a firearm against an individual, the minimum sentence of imprisonment, which may not be suspended, is, . . . [i]n the case of a Class C crime, one year."

the explicit finding" of that fact.  The court sentenced Hodgson on Count 3 to a three-year term of imprisonment, with all but ninety days suspended and four years of probation,[6] and entered judgment.

[¶14]  Hodgson timely appealed.  *See* 15 M.R.S. § 2115 (2025); M.R. App. P. 2B(b)(1).

[¶15]  On August 22, 2024, the State filed a motion pursuant to M.R.U. Crim. P. 35(a) to correct the sentence for domestic violence reckless conduct with a dangerous weapon, arguing that the court erred by not imposing the mandatory minimum one-year sentence prescribed in 17-A M.R.S. § 1604(3)(C).  Hodgson objected to the State's motion, characterizing it as a motion for reconsideration that should be denied because the State had raised the same issue at the sentencing hearing and was bringing the Rule 35 motion only because it had missed the deadline for filing a direct appeal.  Hodgson further argued that the State failed to plead and prove that a firearm was used "against an individual" as required by section 1604(3)(C) and that the court did not make such an explicit finding.  After a hearing on September 10, 2024, the court denied the State's motion.

---

[6] The court sentenced Hodgson to ninety days in jail on Counts 4 and 6, to be served concurrently with Count 3.  The court also ordered Hodgson to pay a total of $115 to the Victims' Compensation Fund for the three convictions.

8

[¶16]   On September 27, 2024, the State filed a notice of appeal, accompanied by the written approval of the Attorney General.  *See* 15 M.R.S. § 2115-A(2-B).  We consolidated the appeals.

## II.  DISCUSSION

### A.    Hodgson's Appeal – Sufficiency of the Evidence

[¶17]  Hodgson challenges the sufficiency of the evidence to support her convictions on Counts 3, 4, and 6.  When determining whether the record contains sufficient evidence to support a conviction, we "view the evidence in the light most favorable to the State to determine whether the fact-finder could rationally find each element of the offense proved beyond a reasonable doubt." *State v. Pelletier*, 2023 ME 74, ¶ 20, 306 A.3d 614 (quotation marks omitted).  Because the court found specific facts in reaching its verdict, we "review those findings for clear error and will uphold them if supported by competent evidence in the record."  *State v. Wilson*, 2015 ME 148, ¶ 13, 127 A.3d 1234.  In a nonjury trial, "the court is free to determine which witnesses to believe and which evidence to accept or reject as trustworthy or untrustworthy."  *State v. Ahmed*, 2006 ME 133, ¶ 21, 909 A.2d 1011.  We "will not substitute our judgment for that of the factfinder unless it is the product of bias, prejudice, or improper influence, or was reached under a mistake of law or in disregard of

the facts." *Pelletier*, 2023 ME 74, ¶ 20, 306 A.3d 614 (alteration and quotation marks omitted).

### 1. Domestic Violence Reckless Conduct with a Dangerous Weapon (Count 3)

[¶18]  To convict Hodgson of domestic violence reckless conduct with a dangerous weapon as charged, the State had to prove beyond a reasonable doubt that (1) Hodgson recklessly created (2) a substantial risk of serious bodily injury[7] (3) to her husband (4) with the use of a dangerous weapon, namely a firearm,[8] 17-A M.R.S. §§ 211-A(1)(A), 1604(5)(A); and that (5) the conduct committed was against "a family or household member as defined in Title 19-A, section 4102, subsection 6," *id.* § 211-A(1)(A).

[¶19]  Hodgson does not dispute that she intentionally aimed and discharged a firearm so that the round would strike the floor inches from the victim's feet.[9]  She contends, however, that the State "failed to prove how

---

[7] "'Serious bodily injury' means a bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ, or extended convalescence necessary for recovery of physical health." 17-A M.R.S. § 2(23) (2025).

[8] By statute, "use of a dangerous weapon" includes "the use of a firearm . . . , which, in the manner it is used or threatened to be used is capable of causing death or serious bodily injury."  17-A M.R.S. § 2(9)(A).

[9] Nor does she contest that the State sufficiently proved that the victim was a family or household member, that the conduct was committed with the use of a dangerous weapon, or that the dangerous weapon was a firearm.

shooting the gun at the floor, not at a person, created a substantial risk of serious bodily harm" because she (1) did not intend to hit the victim and did not aim the gun directly at him when she fired it; (2) has had extensive firearms training and instruction; and (3) knew that the particular type of round that she was shooting was designed to break apart on impact and would not have posed a substantial risk of serious bodily injury to the victim. To say the least, her argument minimizes the seriousness of her actions and is misguided for a number of reasons.

[¶20] Deliberately discharging a firearm aimed at a point inches from another person is the epitome of recklessness. It is immaterial that Hodgson did not aim at or intend to shoot the victim, or that the bullet did not actually strike the victim. "Liability for reckless conduct turns on the creation of risk, not actual harm." *State v. Napier,* 1998 ME 8, ¶ 9, 704 A.2d 869. Indeed, we have held that *merely pointing a loaded firearm* at another can "create[] the risk that the firearm might be discharged causing grave injury to [another]." *Id.*; *see id.* ¶¶ 2, 9 (affirming conviction for reckless conduct where defendant pointed his gun in a threatening manner at a law enforcement officer but did not fire a

shot.)  The court found that Hodgson not only kept a loaded firearm trained on the victim for a period of time but discharged it—toward the victim's feet.

[¶21]  The contention that her use of hollow rounds made the risk of harm less substantial is equally dubious.  The evidence and reasonable inferences drawn from that evidence, *see State v. Stinson*, 2000 ME 87, ¶ 8, 751 A.2d 1011, could rationally persuade the court that she fired the round into a concrete floor covered by a thin carpet, resulting in fragmentation of the bullet and that shrapnel from that fragmentation could cause serious bodily injury, for instance in the form of "substantial impairment of the function of a[] bodily member."  17-A M.R.S. § 2(23) (2025).

[¶22]  Finally, Hodgson asserts that her discharge of the firearm into the floor posed a low risk because it was controlled and intentional.  Yet at that time she was in a highly emotional state and, as found by the court, impaired as a result of consuming alcohol—two factors that obviously can affect judgment and diminish physical control.  And, despite testifying that she had extensive firearms instruction and training, the specifics of which were not provided, Hodgson admitted that her conduct contravened her training and instruction.

To underscore the point: Hodgson testified that it is never safe to handle a firearm while impaired by alcohol.

[¶23] Even assuming arguendo that there could *ever* be circumstances in which it is safe to purposely shoot at the floor inches from another person, the court was under no obligation to weigh the evidence as Hodgson suggests. *See State v. Harding*, 2024 ME 67, ¶ 13, 322 A.3d 1175 (stating that the weight to be given evidence and determinations of witness credibility are the exclusive province of the fact finder); *Mullins v. State*, 767 S.W.2d 166, 169 (Tex. Ct. App. 1988) ("When a person knows that a gun is loaded, and he is familiar with guns and their potential for injury, he may demonstrate recklessness [just] by pointing a gun at another person.").

[¶24] Contrary to Hodgson's argument, the record evidence amply supports the trial court's finding that Hodgson's actions constituted reckless conduct with a dangerous weapon, and we affirm the conviction on Count 3.

### 2. Domestic Violence Criminal Threatening with a Dangerous Weapon (Count 4)

[¶25] To convict Hodgson of domestic violence criminal threatening with a dangerous weapon as charged, the State had to prove beyond a reasonable doubt that (1) Hodgson "intentionally or knowingly place[d] another person [her husband] in fear of imminent bodily injury," 17-A M.R.S. § 209 (2025);

(2) the victim was "a family or household member as defined in Title 19-A, section 4102, subsection 6," 17-A M.R.S. § 209-A(1)(A); and (3) the crime "was committed with the use of a dangerous weapon," *id.* § 1604(5)(A).

[¶26]  Hodgson argues that the State failed to prove one of the essential elements of the offense, namely that that the victim *subjectively* experienced fear when Hodgson pointed the loaded firearm; she claims that the court erroneously considered only whether it was *objectively* reasonable for the victim to be fearful.  Hodgson's arguments are unfounded.

[¶27]  Direct evidence that a victim was in fear of imminent bodily injury is not required to establish this element of the offense of criminal threatening; a fact finder may also consider circumstantial evidence and is entitled to draw all reasonable inferences from the evidence in determining whether the victim was subjectively in fear.  *Stinson*, 2000 ME 87, ¶¶ 7-8, 751 A.2d 1011.  Here, there was ample evidence to support the court's finding that the victim was subjectively fearful even before Hodgson fired the gun at him:

- When asked if he was "scared during this incident," the victim testified, "Oh, yes."

- The victim testified that when he encountered Hodgson inside the front door pointing the gun at him, he was "shocked" and "[i]t was when she'd moved that muzzle off me and come back on me and the look in her eyes, I knew I was in trouble."

- The victim further testified that, while in the bedroom with Hodgson standing over him and still pointing the gun at him, "I kept saying, get that muzzle off me, get that muzzle off me, don't do this," and "[a]t one point, she moved her arm—moved her muzzle off of me, and then she came right back on. And that's the moment I knew I had to get out of there."

[¶28] Further, the recording on the officer's body camera shows the victim reenacting the event and telling the officer that he was "scared to death" when Hodgson pointed the gun at him. And the court's statement that any person would have reasonably felt fear under the circumstances does not negate the victim's subjective experience of fear in the moment. *See id.*; *see also State v. Thibodeau*, 686 A.2d 1063, 1063-64 (Me. 1996).

[¶29] We therefore affirm the conviction of criminal threatening with a dangerous weapon in Count 4.

### 3. Endangering the Welfare of a Child (Count 6)

[¶30] To convict Hodgson of endangering the welfare of a child, the State had to prove beyond a reasonable doubt that Hodgson "recklessly endanger[ed] the health, safety or welfare of the child by violating a duty of care or protection." 17-A M.R.S. § 554(1)(C). Hodgson argues that her actions posed no risk to the children because there was no evidence that the children were at any risk given that the children were upstairs and the incident occurred

downstairs, and because the three-year-old came out of the child's bedroom only once, before Hodgson had discharged the firearm.

[¶31] On the whole and viewed in the light most favorable to the State, the record evidence supports the court's finding that Hodgson's conduct was reckless and endangered her children. Both parties testified that their three-year-old child has a difficult time going to bed, often gets up numerous times a night before eventually settling down, and had already gotten up least once during that evening because the parents were arguing. The responding officer's body camera recording shows the three-year-old repeatedly coming out of the child's room despite being told each time to go back to bed. A parent who carries a loaded firearm around the home while impaired by alcohol and in the throes of a heated argument and then intentionally discharges the weapon inside the home with children present in the home—especially where one child is known to persistently get up after being put to bed—can be found to have acted recklessly and disregarded a risk of potential grave injury to the child.[10]

---

[10] *See State v. Welch*, 600 S.W.3d 796, 813-14 (Mo. Ct. App. 2020) (concluding that the defendant placed several children at substantial risk of harm by discharging a firearm in a mobile home, even though the children were in different rooms); *State v. Davis*, 947 N.W.2d 228 (table), 2020 WL 1310271, at *1-2 (Iowa Ct. App. 2020) (concluding that a father placed his eighteen-month-old child at substantial risk of harm when he discharged a gun into the ceiling while holding the child); *State v. Ingram*, 918 N.W.2d 503 (table), 2018 WL 1870417, at *1, 4-5 (Iowa Ct. App. 2018) (concluding that a father placed his twelve-year-old son at substantial risk of harm when he pointed a shotgun at

[¶32]  We therefore affirm the conviction on Count 6.

## B.  State's Appeal – Application of the Mandatory Minimum Sentence

[¶33]  The State appeals the denial of its Rule 35 motion requesting a correction in Hodgson's sentence to reflect the mandatory minimum one-year term of incarceration prescribed by 17-A M.R.S. § 1604(3)(C).  As a preliminary matter, Hodgson challenges the justiciability of the State's appeal.  She contends that the State filed the motion only because it had missed the twenty-one-day deadline for filing a direct appeal and, therefore, the State's appeal should be dismissed as untimely and nonjusticiable.  We address the question of justiciability before turning to the merits.

### 1.  Propriety and Timeliness of the State's Appeal

[¶34]  The right of the State to appeal in criminal cases is limited. *See generally* 15 M.R.S. § 2115-A;[11] *see State v. Ouellette*, 2019 ME 75, ¶ 16, 208 A.3d 399 (discussing the procedure for appeals by the State in criminal matters).  An appeal "after trial and after a finding of guilty" may be taken only

---

the child's mother's feet during an argument in the child's presence); *see also State v. James E.*, 173 A.3d 380, 386-87 (Conn. 2017) (concluding that a father placed his three-year-old child in danger when the father removed a gun from a kitchen cabinet and engaged in a physical fight with another adult, resulting in the discharge of the gun in "close proximity" to the child, who was near the doorway to an adjacent room).

[11]  Although portions of the statute have been amended since the events at issue here, those amendments do not affect our analysis in this case.  *See* P.L. 2023, ch. 558, §§ 8, 9 (effective Mar. 21, 2024) (codified at 17-A M.R.S. § 2115-A(8), (9) (2025)).

"from the granting of a motion for a new trial, from arrest of judgment, from dismissal or from other orders requiring a new trial or resulting in termination of the prosecution in favor of the accused." 15 M.R.S. § 2115-A(2). As relevant here, however, the statute also expressly authorizes the State to appeal from the denial of a motion to correct or reduce a sentence that it brought pursuant to M.R.U. Crim. P. 35. *Id.* § 2115-A(2-B). Although a criminal defendant may as a matter of right challenge the legality of a sentence on appeal from the judgment of conviction, *State v. Murray-Burns*, 2023 ME 21, ¶¶ 13-14, 17, 290 A.3d 542, the State has no such right. The only means by which the State may challenge what it considers to be an illegal sentence is to file a Rule 35 motion—and if the motion is denied, to appeal.

[¶35] The State filed its Rule 35 motion on August 22, 2024, twenty-four days after the court entered the judgment of conviction, well within the one-year period for filing such motions. *See* M.R.U. Crim. P. 35(a) ("On motion of the defendant or the attorney for the State, or on the court's own motion, made within one year after a sentence is imposed, the justice or judge who imposed sentence may correct an illegal sentence or a sentence imposed in an illegal manner."). After the court denied the State's motion on September 11, 2024, the State filed a notice of appeal on September 27, 2024,

again within the twenty-one-day period for filing appeals in criminal matters. *See* M.R.U. Crim. P. 35(g) ("The Maine Rules of Appellate Procedure govern the procedure for an appeal by the State to the Law Court appeals from an adverse ruling of the court relative to a State-initiated motion made under subdivision (a) or (c)."); M.R. App. P. 2B(b)(1) ("Except for extradition appeals addressed in Rule 2B(b)(3), the time within which an appeal may be taken in a criminal case shall be 21 days after entry into the docket of the judgment or order appealed from, unless a shorter time is provided by law.").

[¶36]  The State's appeal was proper and timely.

## 2.    Section 1604(3)(C)'s Mandatory Minimum Sentence

[¶37]  Section 1604(3)(C) provides in relevant part that "[i]f the State pleads and proves that a Class A, B or C crime was committed with the use of a firearm *against an individual*, the minimum sentence of imprisonment, which may not be suspended, is . . . [i]n the case of a Class C crime, one year." 17-A M.R.S. § 1604(3)(C) (emphasis added).  The State contends that the trial court erred by declining to impose the mandatory minimum period of imprisonment required by section 1604(3)(C) with respect to Count 3 because it had pleaded and proved that Hodgson used a firearm to commit a Class C offense "against an individual," namely her husband, and therefore, on this record, the court did

not need to make a separate, special finding of that fact in order to trigger section 1604(3)(C)'s mandatory minimum sentence. "We review questions of law de novo, including the legality of a sentence and the interpretation of a statute." *Murray-Burns*, 2023 ME 21, ¶ 18, 290 A.3d 542 (quotation marks omitted). The sufficiency of an indictment is also reviewed de novo. *Pelletier*, 2023 ME 74, ¶ 28, 306 A.3d 614.

### a.    Sufficiency of the Pleading

[¶38] Count 3 of the amended indictment states as follows:

**COUNT 3:**               **17-A M.R.S. §211-A(1)(A), 1604(5)(A)**
**Seq No: 11302WU**
**DOMESTIC VIOLENCE RECKLESS CONDUCT**
**WITH A DANGEROUS WEAPON**
**CLASS C**
**ATNCTN 467791B003**

On or about February 03, 2023, in Oakland, Kennebec County, Maine, **HEATHER M. HODGSON**, did recklessly create a substantial risk of serious bodily injury to [her husband] with the use of a dangerous weapon, namely a firearm. This conduct was committed against a family or household member as defined by 19-A M.R.S. §4002(4).

[¶39] Hodgson contends that, for several reasons, the charge set out in Count 3 is insufficient to support the application of section 1604(3)(C) to her sentence. She argues that the caption of the charge fails specifically to cite

section 1604(3)(C) but rather cites only section 1604(5)(A),[12] the statutory provision that increases the class of a crime by one class (here, a Class D offense became a Class C offense) if the State pleads and proves the use of a dangerous weapon in the commission of the crime. *See* 17-A M.R.S. §§ 1604(3)(C), 1604(5)(A). She argues next that the State did not properly plead the charge as required by section 1604(3)(C) because Count 3's language does not allege that the offense was committed "with the use of a firearm against an individual," and therefore does not precisely mirror the statute's language, *id.* § 1604(3). She maintains, therefore, that there was inadequate notice of a mandatory minimum sentence and that the lack of notice prevented her from defending against the allegation, from making arguments at trial, and possibly from engaging in more deliberate plea negotiations.

[¶40]    Hodgson's first argument—that the indictment is deficient because the caption of Count 3 omits a citation to 17-A M.R.S. § 1604(3)(C)—is, as we held in a recent decision dealing with a similar issue, "easily dispensed with." *State v. Woodard,* 2025 ME 32, ¶ 15, 334 A.3d 667. In *Woodard*, we rejected the same argument that Hodgson advances here, namely that omission

---

[12]  Title 17-A M.R.S. § 1604(5)(A) provides, in relevant part: "If the State pleads and proves that a Class B, C, D or E crime was committed with the use of a dangerous weapon, then the sentencing class for such crime is one class higher than it would otherwise be."

of a citation to section 1604(3) from the caption precluded application of the statutory sentence enhancement. *See id.* ¶¶ 12, 15 (holding that "the statutory citation in the caption of the indictment is not part of the charge" and its omission from the indictment did not, *per se*, preclude application of the sentence enhancement in 17-A M.R.S. § 1604(3)); *see also State v. Pierce,* 438 A.2d 247, 254 (Me. 1981) ("The entries [in the caption] form no part of the indictment and neither add to nor take away from the legal effect of the charge as contained in the body of the indictment.").

[¶41]  Hodgson's second argument—that the State failed to plead with sufficient specificity the "use of a firearm against an individual" in the commission of the offense as required by section 1604(3)(C)—is also unavailing.  An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the crime charged."  M.R.U. Crim. P. 7(c); *see State v. Davenport*, 326 A.2d 1, 9 (Me. 1974).  When the sufficiency of an indictment is challenged,

> '[t]he test to be applied is whether a respondent of reasonable and normal intelligence, would, by the language of the indictment, be adequately informed of the crime charged and the nature thereof in order to be able to defend and, if convicted, make use of the conviction as a basis of a plea of former jeopardy, should the occasion arise.'

*Pelletier*, 2023 ME 74, ¶ 28, 306 A.3d 614 (quoting *State v. Charette*, 159 Me. 124, 127, 188 A.2d 898, 900 (1963)); *see also Pierce*, 438 A.2d at 255 ("A person accused of crime has a constitutional right to know from the face of the criminal pleading the exact offense charged against [her].").

[¶42]  It is not required, though, that an indictment use the precise language of the statute so long as the necessary elements of the crime charged (including facts that enhance the sentence) are set forth with sufficient clarity in substantially equivalent language so as to inform a defendant of "reasonable and normal intelligence" that if convicted of the charge she would be subject to the mandatory enhanced sentence.  *See Woodard,* 2025 ME 32, ¶¶ 15-16, 334 A.3d 667 (quotation marks omitted) (holding that the indictment's reference to "handgun" was sufficiently equivalent to "firearm" to trigger the sentence enhancement in section 1604(3) based on use of a "dangerous weapon," which was defined to include a "firearm"); *State v. Satow,* 392 A.2d 546, 549 (Me. 1978) (concluding that allegations in the indictment of "possession" of a "shotgun" and pointing the weapon at another person's chest were sufficient to establish "use" of a firearm for purposes of the sentence enhancement under section 1604's predecessor statute).

[¶43]   We conclude that Count 3 sufficiently alleges that Hodgson committed the offense charged with the use of a firearm *against an individual.* A person is criminally liable for reckless conduct only when the conduct poses "a substantial risk of serious bodily injury *to another person.*"  17-A M.R.S. § 211 (2025) (emphasis added); *see id.* § 211-A(1)(A).  While reckless conduct can encompass actions not directed at a specific individual, *see e.g., State v. Jones*, 405 A.2d 149, 152 (Me. 1979) (citing the comment for section 211, which provides that a person's conduct in throwing a brick from a roof into a crowded street is reckless), here the alleged risk of serious bodily injury with the use of a firearm was specific to one individual, Hodgson's husband.  The fact that this is an allegation of domestic violence reckless conduct makes this point even more directly—the conduct alleged was committed against a particular person—one who is a "family or household member."[13]   17-A M.R.S. § 211-A(1)(A); *see* 19-A M.R.S. § 4102(6) (2025).

[¶44]  In sum, Count 3 alleges that Hodgson's reckless conduct "create[d] a substantial risk of serious bodily injury *to [her husband]*"; the risk was created

---

[13] As defined in Title 19-A, "family or household members" includes "[p]resent or former *spouses*," "*[i]ndividuals* presently or formerly living together as spouses," and "[p]arents of the same child." 19-A M.R.S. § 4102(6)(A)-(C) (2025) (emphasis added); *see also* 17-A M.R.S. § 2(14-A) (2025) (defining an "individual" as a "human being").  The terms "person" and "individual" have been used interchangeably by the Legislature, as exemplified by the change in language when the sentencing statutes were recodified.  *See State v. Asante*, 2020 ME 90, ¶ 13 n.3, 236 A.3d 464.

"with the *use of* a dangerous weapon, namely *a firearm*"; and the conduct "*was committed against*" her husband, "a family or household member." (Emphasis added.) Viewing all circumstances together, where the actual conduct in question involved Hodgson pointing a loaded handgun at the victim and then firing it toward his feet, the allegations in Count 3 sufficiently pleaded that this offense "was committed with the use of a firearm against an individual" so as to adequately inform Hodgson of the crime charged and satisfy the requirement in 17-A M.R.S. § 1604(3).

### b. Sufficiency of the Proof

[¶45] In addition to the facts necessary to support section 1604(3)(C) having been sufficiently pleaded, the evidence admitted at trial supports the court's finding that the State proved these facts beyond a reasonable doubt. There is evidence in the record that Heather Hodgson used a firearm against her husband. She pointed a loaded gun directly at him. She kept the loaded gun trained on him as he proceeded to the bedroom and kept it trained on him in the bedroom as he was gathering his possessions in preparation to leave the house. And she fired the gun such that a discharged round struck the floor only inches from his foot.

[¶46]  The trial judge, as the fact finder, found that the State had proved these facts—indeed proved *all elements* of the offense of domestic violence reckless conduct with a dangerous weapon as charged in Count 3—beyond a reasonable doubt.  The court said at sentencing:

> I found beyond a reasonable doubt, and I still stand by that finding, that the State proved that [Hodgson] recklessly created a substantial risk of serious bodily injury *to [the victim] with the use of a firearm. . . .* And that *it was against a family or household member. . . . I certainly found that the State had proven the elements of the offense as alleged in the indictment.*

(Emphasis added.)  This would, on the evidence presented by the State in this case, establish the factual predicate for application of section 1604(3)(C)'s mandatory minimum sentence, namely "use of a firearm against an individual."

[¶47]   In addressing the State's assertion that section 1604(3)(C)'s mandatory minimum sentence applied, the court questioned whether its conviction of Hodgson on Count 3—that is, its finding that the State had proved beyond a reasonable doubt all elements of Count 3—was sufficient to invoke the statute, or whether a special finding that the defendant used a firearm "against an individual" was necessary.  The court stated, "One could imply from what I said that I made that finding.  I think one could argue that I made an implicit finding that it was against an individual, but I never made the explicit finding."  The court identified the reason for its hesitancy: "What I'm concerned

about is the legal requirement that I think [the case of] *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] implicates."

[¶48] In *Apprendi*, the Supreme Court held that a New Jersey statute that increased the maximum term of imprisonment from ten years to twenty years upon the sentencing judge's finding *by a preponderance of the evidence* violated the defendant's the rights under the Sixth and Fourteenth Amendments. *Id.* at 468-69, 491-92. The Court concluded that any fact other than the fact of a prior conviction that increases the penalty for a crime beyond the statutory maximum must be considered essentially as an element of the offense, submitted to the jury (or fact finder), *and proved beyond a reasonable doubt.* *See id.* at 483-84.

[¶49] The Court subsequently extended the principle enunciated in *Apprendi* to apply to sentence-enhancing facts necessary to support, as here, the imposition of a mandatory minimum sentence. *See Alleyne v. United States*, 570 U.S. 99, 116 (2013) (concluding that "there is no basis in principle or logic to distinguish facts that raise the maximum [sentence] from those that increase the minimum [sentence]"). As we too have recognized, "When . . . there are facts triggering a mandatory minimum sentence, 'each element . . . must be submitted

to the jury'" and proved beyond a reasonable doubt. *See Woodard,* 2025 ME 32, ¶ 14, 334 A.3d 667 (quoting *Alleyne,* 570 U.S. at 113).

[¶50]  Despite the trial court's caution, its findings supporting Hodgson's conviction on Count 3 fully satisfied the foregoing requirements, even without a special finding.  Hodgson had waived a jury trial; the trial judge was the fact finder.  As fact finder, the judge expressly stated that it "certainly found that the State had proven the elements of the offense as alleged in the indictment" beyond a reasonable doubt.  The facts comprising elements of the offense of domestic violence reckless conduct with a dangerous weapon, as pleaded in Count 3 and proved at trial, encompassed section 1604(3)(C)'s requirement of "use of a firearm against an individual."  Thus, on this record—where the indictment adequately pleaded elements of the offense, including the factual predicate for applying section 1604(3)(C)'s mandatory minimum one-year term of imprisonment; the evidence at trial established all elements; and the court, as fact finder, found that the State had proved "all elements," including by necessity the predicate sentencing facts—an additional finding referencing

section 1604(3)'s requirements was unnecessary to trigger section 1604(3)(C)'s mandatory minimum one-year term of imprisonment.[14]

[¶51] Finally, Hodgson's reliance on *State v. Kline*, 2013 ME 54, 66 A.3d 581, to argue that the court was required to make an additional, special finding in this case is misplaced. In *Kline*, the defendant was convicted of reckless conduct with a dangerous weapon based on shooting a handgun towards a lightly wooded area while allegedly target practicing and striking a neighbor in a dwelling located behind the area, approximately 500 feet away. *Id.* ¶¶ 1, 3-5. On appeal, his conviction was upheld but the parties requested, by agreement, that we remand for resentencing because the jury had not been specifically

---

[14] In a case that predates *Apprendi*, *Alleyne*, and *Woodard*, we held that a special finding by the jury as to the use of firearm was *not* required to support of the imposition the mandatory minimum sentencing provisions in section 1604(3)'s predecessor statute, 17-A M.R.S. § 1252(5) (2018), but said that the defendant "may be entitled to (1) an allegation as to [use of a firearm] in the indictment, (2) jury consideration of it under proper instructions from the court, and (3) proof at trial sufficient to support a jury conclusion beyond a reasonable doubt concerning the existence of such factor as charged in the indictment." *State v. Pinkham,* 384 A.2d 444, 446 (Me. 1978). As noted in the text above, we held more recently that such a predicate fact "must be submitted" to the finder of fact and found beyond a reasonable doubt, although the question of whether a separate, special finding was required was neither presented nor addressed. *See State v. Woodard,* 2025 ME 32, ¶¶ 13-14, 334 A.3d 667. In *Woodard*, we concluded that because the indictment alleged all essential elements of the offense, the jury was properly instructed on the definition of "dangerous weapon" as including a "firearm," and the jury returned a guilty verdict and thus "must have found all the necessary facts," the sentencing court properly determined that the mandatory minimum sentence was required. *Id.* ¶¶ 17-18. Thus, in both *Pinkham* and *Woodard*, as here, the fact finder found beyond a reasonable doubt the elements of the offense, which encompassed predicate facts required to trigger the statutory minimum sentence. In light of this requirement, however, juries should be instructed accordingly and asked to make a specific finding to reflect that the State has met its burden of proof with respect to elements of the offense that are specific to sentence enhancements such as those in 17-A M.R.S. § 1604(3). In nonjury trials, judges should be cognizant of this requirement.

instructed that it had to find that the defendant used a firearm "against a person," a requirement for imposition of the mandatory minimum sentence under 17-A M.R.S. § 1252(5) (2012),[15] the predecessor of section 1604(3). *Kline*, 2013 ME 54, ¶¶ 14-15, 66 A.3d 581. Thus, the case was remanded solely "[b]ased on the agreement of the parties," not as a result of an adjudication of the issue. *Id.* It bears noting, however, that unlike the circumstances presented here—where Hodgson's use of the firearm "against an individual" in committing the offense alleged in Count 3 was plainly pleaded and proved beyond a reasonable doubt to the satisfaction of the fact finder—in *Kline* that remained an open question.

The entry is:

> Judgment of conviction affirmed. Sentence for Count 3 (domestic violence reckless conduct with a dangerous weapon) vacated. Remanded for further proceedings consistent with this opinion.

---

[15] Title 17-A M.R.S. § 1252(5) (2012) was repealed by P.L. 2019, ch. 113, § A-1 (effective May 16, 2019). It provided, in relevant part:

> Notwithstanding any other provision of this code, except as provided in this subsection, if the State pleads and proves that a Class A, B or C crime was committed with the use of a firearm against a person, the minimum sentence of imprisonment, which may not be suspended, is as follows: When the sentencing class for the crime is Class A, the minimum term of imprisonment is 4 years; when the sentencing class for the crime is Class B, the minimum term of imprisonment is 2 years; and when the sentencing class for the crime is Class C, the minimum term of imprisonment is one year. . . .

30

Scott F. Hess, Esq. (orally), The Law Office of Scott F. Hess, LLC, Augusta, for appellant Heather M. Hodgson

Maeghan Maloney, District Attorney, and Shannon Flaherty, Asst. Dist. Atty. (orally), Office of the District Attorney, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number KENCD-CR-2023-213
FOR CLERK REFERENCE ONLY